United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 3, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-60003

SEFERINA RODRIGUEZ-CASTRO

Petitioner

v.

ALBERTO R. GONZALES, UNITED STATES ATTORNEY GENERAL
Respondent

Petition For Review of an Order
of the Board of Immigration Appeals

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The question presented is whether attempted misdemeanor
child abandonment, with intent to return to the child, under
section 22.041(b) of the Texas Penal Code is a crime involving
moral turpitude (CIMT) under 8 U.S.C. § 1182(a)(2)(A)(i)(I). We
conclude that it is not. As interpreted by the Texas courts, that
crime is not an "abandonment" in the ordinary sense of the word,
but is, in essence, leaving a child under the age of 15 years
temporarily without adult supervision under circumstances that a
reasonable person would perceive expose the child to an

1

unreasonable risk of harm. Applying the BIA's definition of a CIMT to that category of crime as defined by Texas law, we conclude that the offense does not amount to a CIMT. We therefore grant Ms. Rodriguez-Castro's petition for review, vacate the decision of the BIA, and remand the case to the BIA for further proceedings.

BACKGROUND AND PROCEDURAL HISTORY

Ms. Rodriguez-Castro is a native and citizen of Mexico who entered the United States some time between 1986 and 1990 without inspection or parole. On September 9, 1999, she was indicted in Texas state court for child abandonment with intent to return in violation of Texas Penal Code section 22.041, subsections (b) and (c). She ultimately pleaded guilty to the lesser included charge of attempted misdemeanor child abandonment with intent to return, in violation of Texas Penal Code section 22.041(b). On July 25, 2001, the state court accepted her guilty plea. Ms. Rodriguez-Castro was sentenced to pay a fine and serve 364 days in jail, with imprisonment suspended subject to probation and community service.

On September 24, 1999, the INS charged Ms. Rodriguez-Castro under 8 U.S.C. § 1182(a)(6)(A)(1), i.e., as an inadmissable alien ineligible for admission because she was present in the U.S. "without being properly admitted or paroled" or because she

2

arrived in the United States at "[a] time or place other than as designated by the Attorney General as admissible." Under 8 U.S.C. § 1227(a)(1)(A), such inadmissible aliens are deportable. Ms. Rodriguez-Castro conceded her removability and sought relief by filing an application for cancellation of removal.

Under 8 U.S.C. § 1229b(b)(1), a nonpermanent alien may be granted cancellation by the Attorney General if: 1) she has been present continuously in the U.S. for at least 10 years; 2) she has been "a person of good moral character during [that] period[,]" 8 U.S.C. § 1229b(b)(1)(B); 3) she has not been convicted of certain categories of crimes - including crimes meeting the requirements of 8 U.S.C. § 1227(a)(2), crimes of moral turpitude; and 4) removal "would result in exceptional and extremely unusual hardship to the alien's... child, who is a citizen of the U.S." 8 U.S.C. § 1229b(b)(1)(D).

The immigration judge found Ms. Rodriguez-Castro's conviction for attempted misdemeanor child abandonment qualified as a CIMT. Thus, Ms. Rodriguez-Castro was not eligible for cancellation of removal: "[r]espondant is barred as an alien convicted of an offense under 8 U.S.C. § 1227(a)(2) [CIMTs] and is unable [because of that conviction] to show good moral character." Immigration Judge's Opinion at 6. As a result, a final order was entered, sustaining the charge under 8 U.S.C. § 1182, denying the application for cancellation of removal on the

3

basis of statutory ineligibility, and ordering Ms. Rodriguez-Castro removed from the U.S. Immigration Judge's Opinion at 7. On December 13, 2003 the BIA affirmed the Immigration Judge's decision without opinion. Ms. Rodriguez-Castro timely filed a petition for review of the BIA's decision.

JURISDICTION

On May 11, 2005, the President signed the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, broadening the court's jurisdiction by adding a section to 8 U.S.C. § 1252.[1] The addition reads:

> Judicial Review of Certain Legal Claims: Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section. 8 U.S.C. § 1252(a)(2)(D).

Section 106(b) of the REAL ID Act makes the above section

---

[1]Before May 2005, the final order in Ms. Rodriguez-Castro's case denying her application for cancellation and ordering her removal would not be subject to review: "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense [under certain provisions of the INA, including 8 U.S.C. § 1227(a)(2), which includes CIMTs]." 8 U.S.C. § 1252(a)(2)(C) (2004). Even then, however, courts retained the ability to review the underlying jurisdictional facts at issue – for example, whether a particular state statute created a crime properly classified as a CIMT. In Ms. Rodriguez-Castro's case, if her crime was properly classified as a CIMT, a court would have to dismiss her petition for lack of jurisdiction; if it was not properly classified, the court could exercise jurisdiction and vacate the order of removal.

4

applicable retroactively. Pub. L. No. 109-13, 119 Stat. 231.

The REAL ID Act thus removes jurisdictional bars to direct review of questions of law in final removal, deportation, and exclusion orders. See Papageorgiou v. Gonzalez, 413 F.3d 356, 358 (3d Cir. 2005); accord Fernando-Ruiz v. Gonzalez, 410 F.3d 585, 587 (9th Cir. 2005); Gattem v. Gonzalez, 412 F.3d 758, 762 (7th Cir. 2005); Lopez v. Gonzales, No. 04-2397, 2005 WL 1869044 at *1 (8th Cir. Aug. 9, 2005). In Ms. Rodriguez-Castro's case, the question is entirely a question of law - whether the BIA properly classified the Texas statute as a CIMT. Because a question of law is at issue and because the statute explicitly applies retroactively, we have jurisdiction over Ms. Rodriguez-Castro's case.

## STANDARD OF REVIEW

The INA "'does not define the term "moral turpitude" and legislative history does not reveal congressional intent' regarding which crimes are turpitudinous." Smalley v. Ashcroft, 354 F.3d 332, 335 (5th Cir. 2003) (quoting Pichardo v. I.N.S., 104 F.3d 756, 759 (5th Cir. 1997)). Instead, Congress left the interpretation of this provision to the BIA and interpretation of its application to state and federal laws to the federal courts. Okoro v. I.N.S., 125 F.3d 920, 926 (5th Cir. 1997).

The immigration regulations provide that a CIMT is an

offense that is both 1) a crime in the jurisdiction of occurrence, and 2) a crime of turpitude per the "moral standards generally prevailing in the United States." 22 C.F.R. § 40.21 (2005). We have concluded that the BIA, through its administrative decisions, has interpreted and defined "crime involving moral turpitude" as follows:

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

Hamdan v. I.N.S., 98 F.3d 183, 186 (5th Cir. 1996)(quoting the BIA's decision in that case) (internal citations omitted); see also Omagah v. Ashcroft, 288 F.3d 254, 259-60 (5th Cir. 2002) (quoting Hamdan language with approval). Consequently, we give Chevron deference to the BIA's interpretation of the INA when appropriate, but we review de novo the BIA's interpretation and evaluation of state law in deciding whether a particular state law is a CIMT. See Omagah, 288 F.3d at 258 (5th Cir. 2002); accord, Okoro v. I.N.S., 125 F.3d 920, 926 (5th Cir. 1997); Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004) ("in determining what the elements are of a particular criminal statute deemed to implicate moral turpitude, we do not defer to

6

the BIA."); <u>Michel v. I.N.S.</u>, 206 F.3d 253, 262 (2d Cir. 2000) (stating that when "the BIA is interpreting state or federal criminal laws, we must review its decision de novo") (citing <u>Hamdan</u>, 98 F.3d 183, 185 (5th Cir. 1996)).

In our de novo interpretation and evaluation of a state law, we look to the statutory crime definition as interpreted by the state's courts, without regard to the particular circumstances surrounding the specific offender's violation. <u>Okabe v. I.N.S.</u>, 671 F.2d 863, 865 (5th Cir. 1982)("Whether a crime involves moral turpitude depends upon the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression."); <u>accord</u>, <u>Padilla v. Gonzalez</u>, 397 F.3d 1016, 1019 (7th Cir. 2005); <u>DeLeon-Reynoso v. Ashcroft</u>, 293 F.3d 633, 635 (3d Cir. 2002); <u>Nguyen v. Reno</u>, 211 F.3d 692, 695 (1st Cir. 2000)). When applying the categorical approach, "the statute must be read at the minimum criminal conduct necessary to sustain a conviction under the statute." <u>Hamdan</u>, 98 F.3d at 189 (citing <u>U.S. ex rel. Guarino v. Uhl</u>, 107 F.2d 399, 400 (2d Cir. 1939)); <u>accord</u>, <u>Partyka v. Attorney General of the U.S.</u>, No. 04-2804, 2005 WL 1906903 at *3 (3d Cir. Aug. 11, 2005); <u>Matter of Marchena</u>, 12 I. & N. Dec. 355, 357 (BIA 1967). Generally, a statute that encompasses both acts that do and do not involve moral turpitude cannot be the basis of removal determination under the categorical approach. <u>Hamdan</u>, 98

7

F.3d at 187 (citing <u>Matter of Short</u>, 20 I. & N. Dec. 136, 138 (BIA 1989)); <u>accord</u>, <u>Smalley v. Ashcroft</u>, 354 F.3d 332, 336 (5th Cir. 2003); <u>Omagah v. Ashcroft</u>, 288 F.3d 254, 260 (5th Cir. 2002); <u>Pichardo v. I.N.S.</u>, 104 F.3d 756, n.6 (5th Cir. 1997); <u>Michel v. I.N.S.</u>, 206 F.3d 253, 263 (2d Cir. 2000); <u>Partyka v. Attorney General of the U.S.</u>, No. 04-2804, 2005 WL 1906903 at *3 (3d Cir. Aug. 11, 2005); .


DISCUSSION

Section 22.041 of the Texas Penal Code provides:

(a) In this section, "abandon" means to leave a child in any place without providing reasonable and necessary care for the child, under circumstances under which no reasonable, similarly situated adult would leave a child of that age and ability.

(b) A person commits an offense if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm.

(c) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment.

(d) Except as provided by Subsection (e), an offense under Subsection (b) is:

        (1) a state jail felony if the actor abandoned the child with intent to return for the child; or

        (2) a felony of the third degree if the actor abandoned the child without intent to

8

return for the child.

(e) An offense under Subsection (b) is a felony of the second degree if the actor abandons the child under circumstances that a reasonable person would believe would place the child in imminent danger of death, bodily injury, or physical or mental impairment.

(f) An offense under Subsection (c) is a state jail felony.

(g) It is a defense to prosecution under Subsection (c) that the act or omission enables the child to practice for or participate in an organized athletic event and that appropriate safety equipment and procedures are employed in the event.

(h) it is an exception to the application of this section that the actor voluntarily delivered the child to a designated emergency infant care provider under Section 262.302, Family Code.

The offense of <u>attempted</u> abandonment of a child with the intent to return is a misdemeanor. TEX. PENAL CODE § 15.01 (Vernon 2005).

The statute defines "abandon" in negligence language while punishing an offender who "intentionally abandons" a child. The Texas courts have solved this legislative enigma by reading "intentionally" to refer only to the offender's act of leaving the child unattended by another caretaker. Thus, conviction does not require proof that the offender knew that his act of abandonment exposed the child to unreasonable risk of harm, but requires only that the circumstances in which the child was left would have been recognized by a reasonable similarly situated adult to present an unreasonable risk of harm to the child.

Consequently, proof of the basic crime of child abandonment

requires the state to establish that the offender knew he was leaving the child in a place without a reasonably adequate caretaker and that, regardless of the offender's actual knowledge, the circumstances under which the child was left exposed the child to an unreasonable risk of harm. See Schultz v. State, 923 S.W.2d 1, 1-2 (Tex. Cr. App. 1996) ("the culpable mental state under Sec. 22.041(b) is 'intentional' and [] the mental state attaches to conduct rather than to circumstances surrounding conduct."); see also Herbst v. State, 941 S.W.2d 371, 373 (Tex.App.-Beaumont Mar 12, 1997)(a court must "look at the circumstances...through the eyes of a 'reasonable, similarly situated adult' and through the eyes of a 'reasonable person'."); J. LEE BALDWIN, et al., l19 TEX.JUR.3D CRIMINAL LAW § 472 , n.76 (2005)("A conviction of the offense of abandonment of a child does not require proof that the defendant was reckless with regard to the circumstances surrounding the abandonment, but rather, only proof that the defendant intentionally abandoned the child. Thus abandoning a child may be a criminal offense, even if the person leaving the child is unaware of the risk in doing so."). In contrast, the offense of leaving a child in a vehicle, TEX. PENAL CODE section 22.10 (Vernon 2005), "explicitly requires" knowing or intentional leaving as well as knowledge of the circumstances - that the child is "under seven years old not attended by a person 14 years or older." BALDWIN,

10

<u>supra</u>, § 474 .

Under § 22.041, the level of culpability and punishment for child abandonment by a custodian varies depending on whether the offender intended to return to the child and on the degree of risk to which the child is exposed. <u>See</u> TEX. PENAL CODE § 22.041(d)(1), (d)(2). The offense constitutes only a jail felony if the offender left the child with the intent to return for the child. <u>Id.</u> § 22.041(d)(1). An <u>attempt</u> to commit that jail felony is punishable only as a misdemeanor. <u>Id.</u> § 15.01. On the other hand, a violation of the statute by a custodian without an intent to return for the child is a third degree felony. <u>Id.</u> § 22.041(d)(2). A violation under circumstances that a reasonable person would believe expose the child to imminent danger of death, bodily injury, or physical or mental impairment is a second degree felony. <u>Id.</u> § 22.041(e).

Before the enactment of section 22.041 in 1985, when a child was abandoned by a person with custody of the child, that person could be prosecuted only if the child suffered injury or death. <u>Schultz v. State</u>, 923 S.W.2d 1, n.4( Tex. Crim. App. 1996). Apparently, in an attempt to curb an increasing incidence of appalling parental desertions, such as infants left in fields and trash dumpsters, young children left unattended several weeks in filthy apartments, and three year olds left in a house alone with open flame heaters for half the night in winter, the

11

scope of the crime of child abandonment was greatly expanded. Id.(discussing legislative history). Section 22.041 was enacted to criminalize virtually any act of leaving a child unattended in a dangerous situation, regardless of whether the child was harmed, and without the necessity of proving the offender's intent, recklessness, or even awareness of the child's jeopardy. Consequently, this broad approach to the problem brings within the ambit of culpability and punishment not only the despicable and malevolent but also the foolish and negligent.

Ms. Rodriguez's crime of conviction ranks within the lowest grade of the offense, as an attempted non-harmful temporary leaving with the intent to return. TEX. PENAL CODE §§ 15.01, 22.041(b),(d)(1). At the minimum level of culpability within this category, the offense may be viewed as an act involving only negligence in temporarily leaving a child, with the intent to return, in a situation of unreasonable risk, but without harm to the child.  Thus, the crime at issue in the present case must be presumed to be one of the least in culpability within that range, such as, for example, a mother's quick trip next door to borrow some sugar while carelessly leaving a toddler alone in a kitchen with a pot boiling, electric sockets uncovered, and ordinary utensils accessible.

To shed light on whether the crime at issue is a CIMT, we turn to the BIA's general definition, and also to other indicia

12

of moral turpitude that have been inferred from the BIA's numerous decisions. Although none of these amounts to an indisputable hallmark or conclusive identification of a CIMT, the absence of any contrary indication by them in the present case further convinces us that the crime here is not a CIMT.

As a general rule, laws that authorize criminal punishment without proof that the offender intended or recklessly disregarded the potential consequences of his act do not define CIMTs. See generally Michel v. I.N.S. 206 F.3d 253, 265 (2d Cir. 2000)("[M]oral turpitude...is a question of the offender's evil intent or corruption of the mind.")(quoting In re Serna, 20 I.& N. Dec. 579, 581-582(BIA 1989)); Id. at 263 ("[Corrupt scienter is the touchstone of moral turpitude."). Thus, negligence-based crimes usually do not amount to CIMTS. See, e.g., Partyka v. Attorney General of the U.S., No. 04-2804, 2005 WL 1906903 at *4 (3d Cir. Aug. 11, 2005) ("The negligent infliction of bodily injury lacks this essential culpability requirement [of consciousness or deliberateness]. By definition, a negligent assault is unintentional, unwitting, and committed without contemplation of the risk of injury involved."); In re Perez-Contreras, 20 I. & N. Dec. 615 (BIA 1992) (stating, with regard to a Washington state statute for third degree assault, that "[s]ince there was no intent [to cause a particular harm], not any conscious disregard of a substantial and unjustifiable risk,

we find no moral turpitude inherent in the statute."). Similarly, strict liability crimes generally are not CIMTs. Mei v. Ashcroft, 393 F.3d 737, 740 (7th Cir. 2004)("[C]rimes deemed not to involve moral turpitude...are either very minor crimes that are deliberate or graver crimes committed without a bad intent, most clearly strict-liability crimes.")(citing (Rodriquez-Herrera v. I.N.S., 52 F.3d 238, 241; Goldeshtein v. I.N.S., infra; State v. Miller, infra); Goldeshtein v. I.N.S., 8 F.3d 645, 648 (9th Cir. 1993) (holding that financial structuring crimes which contain "no element of scienter" are not CIMTs); State v. Miller, 836 P.2d 1004, 1005 (Ariz. App. 1992) (stating that the crimes of conducting business and advertising without a license "do not require any culpable mental state" and therefore are not CIMTS.); In re L-V-C, 22 I. & N. Dec. 594, 602 (BIA 1999)(following Goldeshtein). Cf., Smalley v. Ashcroft, 354 F.3d 332, 338-9 (5th Cir. 2003) (Distinguishing structuring crime in Goldeshtein, since it "requires no intent to defraud the government," from money-laundering, which is a CIMT because it involved intent to defraud and conceal illegal drug proceeds).

In the same vein, BIA decisions in which failure to support a child has been found to be a CIMT involve willful and intentional acts that leave a child in destitute circumstances. See, e.g., In the Matter of R., 4 I. & N. Dec. 192, 194 (BIA

14

1950)(holding violation of a Wisconsin statute was a CIMT because it required both wilfulness and destitution of the child); In the Matter of S., 2 I. & N. Dec. 553 (BIA 1946) (finding same with regard to New York statute); In the Matter of R., 4 I. & N. Dec. at 194 (observing that most CIMT failure to support statutes require willfulness and destitution). In the CIMT failure-to-support cases, the defendant was culpable of more than mere negligence. Rather, the classifications of these crimes as CIMTS were based essentially on the defendant's willfulness and the resulting destitution of the child. Further, the BIA declined to classify a failure to support violation as a CIMT where the statute imposed criminal liability despite the defendant's "good faith and honest motives." In the Matter of E, 2 I. & N. Dec. 134, 135 (BIA 1944)) (holding that an Ohio nonsupport statute was not a CIMT because a parent could violate it even where he honestly believed he was acting in the child's best interests).

Evaluating the category of conduct criminalized by section 22.041(b), measured by the least culpable conduct required for its commission, in light of the BIA's general definition of a CIMT, as well as the BIA and court decisions involving negligence and strict-liability crimes, we conclude that the offense at issue here is not a CIMT. The state crime in this case does not qualify as a CIMT because it does not shock the

15

public conscience as being inherently base, vile, or depraved; it is not per se morally reprehensible and intrinsically wrong, or _malum_ _in_ _se_; and it is not accompanied a vicious motive or a corrupt mind.

CONCLUSION

For these reasons, we GRANT Ms. Rodriguez-Castro's petition for review, VACATE the decision of the BIA and REMAND the case to the BIA for further proceedings not inconsistent with this opinion.