United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 29, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-60692

FILOGONIO GARCIA-MALDONADO,

Petitioner,

versus

ALBERTO R. GONZALES, U S ATTORNEY GENERAL

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Before REAVLEY, GARZA, and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:

Alien Filogonio Garcia-Maldonado (Garcia) seeks review of the Bureau of Immigration Appeals (BIA) final order affirming the Immigration Judge's (IJ's) determination that Garcia's hit-and-run conviction under the Texas Transportation Code qualifies as a crime involving moral turpitude, rendering him ineligible for discretionary relief from removal. The Government questions our jurisdiction to entertain this appeal. We do have jurisdiction and, for the following reasons, affirm.

## I. Background

Garcia, a native and citizen of Mexico, legally entered the United States in 1964. After his admission, Garcia was convicted of two crimes under Texas law: by guilty plea in 1994 of assault with a deadly weapon and by jury conviction in 1998 of failure to stop and render aid following a fatal auto accident in which he was involved. Garcia later left the United States and, when he returned in 2000, he was charged as an inadmissible arriving alien. The IJ found Garcia removable on the basis of the two aforementioned convictions, deeming both crimes aggravated felonies. The IJ also found that the 1994 assault conviction was for a crime involving moral turpitude (CIMT) and implied without expressly stating that the 1998 conviction was for a CIMT as well. Garcia appealed to the BIA.

Garcia did not challenge his removability on appeal, but did appeal the IJ's determination that he was ineligible to apply for a waiver of deportation under former INA § 212(c) because the 1998 failure-to-stop conviction did not meet the criteria for discretionary relief under that section under INS v. St. Cyr.[1] Garcia sought to eliminate

---

[1] See 533 U.S. 289, 326, 121 S. Ct. 2271, 2293 (2001), in which the Supreme Court stated that § 212(c) relief, formerly codified at 8 U.S.C. § 1182(c), "remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." The BIA found Garcia ineligible for § 212(c) waiver because the failure-to-stop conviction was by jury rather than plea and occurred in 1998, after § 212(c) had been repealed. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009-597.

the 1998 crime from consideration as a removable offense, arguing that the failure-to-stop conviction was neither a CIMT nor an aggravated felony and was not a conviction for immigration purposes because it was on appeal.  The BIA held that, because a vacated conviction remains a conviction for immigration purposes under Fifth Circuit law, the failure-to-stop conviction likewise remained a conviction, whether on appeal or not.  The BIA did not rule on whether the failure-to-stop conviction was an aggravated felony, deeming Garcia removable without such a finding because the failure-to-stop conviction was for a CIMT.

## II.  Whether we have jurisdiction over Garcia's case.

This case reaches us having been filed as a habeas action in the district court and transferred and converted to a petition for review to this court pursuant to the REAL ID Act.  Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c).  The Act amended 8 U.S.C. 1252(a)(2)(C) to preclude judicial review of the BIA's determination that an alien is ineligible for discretionary relief based on, inter alia, commission of a CIMT.  See Pub. L. No. 109-13, 119 Stat. 231, 310 § 106(a)(1)(A)(ii).  However, we retain jurisdiction to review constitutional claims and questions of law associated with the claim for discretionary relief.  See 8 U.S.C. § 1252(a)(2)(D).  Because the issue of whether Garcia's failure-to-stop conviction involves a CIMT is a purely legal question, we have jurisdiction to consider the petition.  Rodriguez-Castro v. Gonzales, 427 F.3d 316, 319 (5th Cir. 2005).

## II.  Whether Garcia's 1998 conviction was for a crime involving moral turpitude.

An alien who has been convicted of a crime of moral turpitude is inadmissible. See 8 U.S.C. § 1182(a)(2)(A)(i)(I). Under 8 U.S.C. § 1227(a)(2)(A)(i)(I), such inadmissible aliens are deportable. "The INA does not define the term 'moral turpitude' and legislative history does not reveal congressional intent regarding which crimes are turpitudinous. Rodriguez-Castro, 427 F.3d at 319-20 (internal quotations and citations omitted). "Instead, Congress left the interpretation of the CIMT provision to the BIA and interpretation of its application to state and federal laws to the federal courts." Id. The question before us is whether failure to stop and render aid under section 550.021 of the Texas Transportation Code is a CIMT for immigration purposes. We conclude that it is.

We have not previously considered whether failure to stop and render aid is a CIMT and find no case in which other circuit courts or the BIA have analyzed this question. The immigration regulations provide only that a CIMT is an offense that is both (1) a crime in the jurisdiction of occurrence, and (2) a crime of turpitude per the "moral standards generally prevailing in the United States." 22 C.F.R. § 40.21(a)(1) (2006). Although, the State Department's Foreign Affairs Manual has a lengthy list of CIMTs, no mention is made of failure to stop and render aid. See 9 FAM 40.21(a) Note 2.

In cases determining whether other offenses are CIMTs, we have referred to the fact that the BIA, through its administrative decisions, has interpreted and defined "crime involving moral turpitude" as follows:

Moral turpitude refers generally to conduct that shocks the public conscience

4

as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

Rodriguez-Castro, 427 F.3d at 320 (citing Hamdan v. INS, 98 F.3d 183, 186 (5th Cir. 1996) (quoting the BIA's decision in that case). We give Chevron[2] deference to the BIA's interpretation of the INA when appropriate, but we review de novo the BIA's interpretation and evaluation of state law in deciding whether a particular state law offense is a CIMT. Rodriguez-Castro, 427 F.3d at 320.

In our de novo interpretation and evaluation of a state law, we look to the statutory text as interpreted by the state's courts, without regard to the particular circumstances surrounding the specific offender's violation. Id.; Okabe v. INS, 671 F.2d 863, 865 (5th Cir. 1982) ("Whether a crime involves moral turpitude depends on the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression."). When applying this categorical approach, the statute must be read at the minimum criminal conduct necessary to sustain a conviction under the statute. Rodriguez-Castro, 427 F.3d at 320. Thus, as a general rule, a statute that encompasses both acts that do and do not involve moral turpitude cannot be the basis of a

_____

[2] Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).

removal determination under the categorical approach.  Id. (citations omitted).  "An

exception to this general rule is made if the statute is divisible into discrete subsections of

acts that are and those that are not CIMTs."  Smalley v. Ashcroft, 354 F.3d 332, 336 (5th

Cir. 2003) (quoting Hamdan, 98 F.3d at 187).  In this situation, we look to the alien's

record of conviction to determine whether he has been convicted of a subsection that

qualifies as a CIMT.  Id.

Garcia was charged with and convicted of violating Texas Transportation Code §

550.021, which provides, in pertinent part, as follows:

(a)     The operator of a vehicle involved in an accident resulting in injury
        to or death of a person shall:

   (1)     immediately stop the vehicle at the scene of the accident or as
           close to the scene as possible;

   (2)     immediately return to the scene of the accident if the vehicle
           is not stopped at the scene of the accident; and

   (3)     remain at the scene of the accident until the operator complies
           with the requirements of Section 550.023.

Section 550.023 of the Code, in turn, sets forth the following requirements:

The operator of a vehicle involved in an accident resulting in the injury or
death of a person or damage to a vehicle that is driven or attended by a person
shall:

   (1)     give the operator's name and address, the registration number of
           the vehicle the operator was driving, and the name of the
           operator's motor vehicle liability insurer to any person injured
           or the operator or occupant of or person attending a vehicle
           involved in the collision;

   (2)     if requested and available, show the operator's driver's license

6

to a person described by Subdivision (1); and

(3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

Where an offense includes alternative means of commission, and one range of conduct is not necessarily contrary to accepted rules of morality, that conviction will not involve moral turpitude unless the record of conviction demonstrates that the guilt there was for reprehensible conduct. Although the above statute in section 550.023 could be read to require proof of both failure to share information and render aid, Texas courts have held otherwise. Sheldon v. State.[3] In the present case, looking to the record of conviction, we see that Garcia was indicted for being involved in an accident resulting in death and intentionally and knowingly leaving the scene and failing to stop and render aid. And the judgment of conviction states that Garcia was convicted of the felony offense of "failure to stop and render aid."

The remaining question, then, is whether failure to stop and render aid is a CIMT. Urging us to look to the judicial interpretation of the statute by the state's courts, Garcia relies on a Texas court of appeals decision in which the court required more than evidence of the violation of section 550.021 to justify disbarment of an attorney. Tate v. State Bar of

---

[3] 100 S.W.3d 497, 504 (Tex. App. - Austin 2003, pet. ref'd).

7

<u>Texas</u>[4]. The Texas statute does make disbarment mandatory if the attorney is convicted of a felony involving moral turpitude. But the Texas Courts do not stop with the conviction itself and proceed to decide whether the attorney's actions reflect adversely on his moral fitness to continue in the practice of law, considering "the circumstances surrounding the commission of the crime, and should review the record from the underlying criminal proceeding." <u>Id</u>. (citing <u>Turton v. State Bar of Texas</u>,[5] ("[I]n this kind of case involving disciplinary action, the trier of fact should examine the totality of the circumstances, including any mitigating circumstances."). Our decision here does not bear on the fitness of Garcia to practice a profession; it is to decide only the record of his conviction and whether the federal statute makes him ineligible for waiver of removal for that reason.

Garcia also points to <u>Rodriguez-Castro</u> in which we held that an alien's Texas conviction for attempted misdemeanor child abandonment with intent to return for the child was not a CIMT. 427 F.3d at 321-324 (analyzing Tex. Pen. Code §§ 15.01, 22.041(b) & (d)(1)). The <u>Rodriguez-Castro</u> court reasoned that, under the statute, abandoning a child can occur without the requisite knowledge or thought that there is anything wrong with it (e.g. mother leaves child briefly unattended to ask neighbor for sugar). <u>Id</u>. at 322. Here, contrary to the penal statute at issue in <u>Rodriguez-Castro</u>, no such potential mitigating mindset ("intent to return") is written into section 550.21 and we are precluded from hypothesizing

---

[4] 920 S.W.2d 727, 729 (Tex. App. - Houston [1st Dist.] 1996, writ. denied).

[5] 775 S.W.2d 712 (Tex. App. — San Antonio 1989, writ denied)

8

beyond Garcia's record of conviction. Because Garcia was charged and convicted of intentionally leaving the scene of a serious accident, it follows that he had knowledge that the accident occurred. Once a driver knows he was involved in an accident, he necessarily knows it is wrong to leave, or at the very least, to leave without attempting reasonable assistance.

We agree with the BIA's conclusion that the failure to stop and render aid after being involved in an automobile accident is the type of base behavior that reflects moral turpitude. The subsection of section 550.21 that criminalizes failure to render aid proscribes behavior that runs contrary to accepted societal duties. Moral turpitude inheres in this crime because the offense reflects an intentional attempt to evade responsibility and is intrinsically wrong. Because Garcia's offense under section 550.021 is both morally reprehensible and contrary to the accepted rules of morality in our society, we find it to be a CIMT for immigration purposes. Accordingly, the BIA did not err in finding that Garcia's 1998 failure-to-stop conviction, which was ineligible for St. Cyr waiver, precluded Garcia from seeking discretionary relief from removal.

III. Whether the BIA erred in holding that a conviction exists for immigration purposes regardless of whether a direct appeal is pending.

Garcia does not argue here that an appeal is actually pending for his 1998 failure-to-stop conviction. Instead, he seeks remand for an evidentiary hearing on the status of the appeal, the BIA having, Garcia claims, disallowed such evidence. We note that

9

Garcia's conviction was affirmed in October 2006, after briefing in this case was closed,[6] but find no error in the BIA's ultimate conclusion that a then-pending appeal, if any, would have no effect.

The BIA correctly concluded that, even if on appeal, the failure-to-stop conviction remained effective for immigration purposes under our controlling precedent. The BIA relied on our original decision in <u>Discipio v. Ashcroft</u> ("<u>Discipio I</u>"),[7] for its holding that a conviction which is vacated for any purpose remains a conviction for immigration purposes. <u>Discipio I</u> was based on our earlier decision in <u>Renteria-Gonzalez v. INS</u>, 322 F.3d 804 (5th Cir. 2002). We recognize that <u>Renteria-Gonzalez</u> is inconsistent with holdings by other circuits[8] and we followed it with express reservation in the <u>Discipio I</u> opinion.[9]

Garcia contends that, because we vacated the panel opinion in <u>Discipio I</u> upon denial of rehearing <u>en banc</u>, we have abandoned its holding and the <u>Renteria-Gonzalez</u> precedent. However, we vacated the <u>Discipio I</u> opinion because the Government

---

[6] <u>See</u> <u>Garcia v. State</u>, No. 13-01-393-CR, 2006 WL 3097393 (Tex. App.—Corpus Christi 2006, pet. ref'd) (mem. op., not designated for publication)..

[7] 369 F.3d 472 (5th Cir. 2004) <u>vacated on denial of rehearing en banc by</u> <u>Discipio v. Ashcroft</u>, 417 F.3d 448 (5th Cir. 2005) ("<u>Discipio II</u>").

[8] <u>See</u>, <u>e.g.</u>, <u>Pickering v. Gonzales</u>, 465 F.3d 263 (6th Cir. 2006); <u>Alim v. Gonzales</u>, 446 F.3d 1239 (11th Cir. 2006); <u>Pinho v. Gonzales</u>, 432 F.3d 193 (3d Cir. 2005); <u>Cruz-Garza v. Ashcroft</u>, 396 F.3d 1125 (10th Cir. 2005); <u>Sandoval v. INS</u>, 240 F.3d 577 (7th Cir. 2001).

[9] 369 F.3d at 474.

modified its position and terminated deportation proceedings against Discipio because his conviction had been vacated on procedural and substantive defects, the Government bowing to the BIA's opinion in In re Pickering.[10]  See Discipio II, 417 F.3d at 449-50.  In In re Pickering, noting the statute defining "conviction" for immigration purposes is silent on the effect of a vacated conviction on an alien's immigration status, the BIA held that convictions vacated on the basis of procedural and substantive defects were not valid for purposes of immigration, while those vacated because of post-conviction events such as rehabilitation were to be given effect in immigration proceedings.  23 I. & N. Dec. 621, 624.  This may be the stance of our sister circuits, but is not the law in this circuit. We must conclude that Garcia's failure-to-stop conviction is valid for immigration purposes, regardless of whether it was on appeal at the time of the IJ and BIA determinations.

PETITION DENIED.

---

[10]  23 I. & N. Dec. 621, 2003 WL 21358480 (BIA 2003) rev'd on other grounds Pickering v. Gonzales, 465 F.3d 263 (6th Cir. 2006).

DENNIS, Circuit Judge, dissenting:

I respectfully dissent.

The majority holds that Garcia-Maldonado's conviction for the offense of failure to stop and render aid[1] under Texas law is a crime involving moral turpitude that renders him ineligible for relief under former section 212(c) of the Immigration and Nationality Act. To reach that result, however, the majority incorrectly applies the categorical approach that this court employs to determine whether an offense is a crime involving moral turpitude for immigration purposes and disregards relevant Texas case law. Because a correct application of the categorical approach that respects the Texas state courts' interpretation of Texas law compels the conclusion that failure to stop and render aid is not categorically a crime involving moral turpitude, I must dissent.

To determine whether an offense is a crime involving moral turpitude for immigration purposes, this court uses a

---

[1]As the majority explains, Tex. Transp. Code Ann. § 550.021 provides that a person involved in an accident that results in injury or death to a person must stop and remain at the scene of the accident until he or she complies with the duties set out at Tex. Transp. Code Ann. § 550.023, which include providing reasonable assistance to any person injured in the accident. See id. § 550.023(3). I do not take issue with the majority's conclusion that Garcia-Maldonado was convicted of failing to comply with the duty to stop and render aid to an injured person.

12

categorical approach, under which we look to the nature of the offense, rather than the actual facts surrounding the petitioner's conviction. When applying the categorical approach, "we read the statute at its minimum, taking into account the minimum criminal conduct necessary to sustain a conviction under the statute." Amouzadeh v. Winfrey, 467 F.3d 451, 455 (5th Cir. 2006) (internal quotation marks omitted). If the statute can be violated by conduct that does not involve moral turpitude, then the offense is not a crime involving moral turpitude for immigration purposes. See id. ("[I]f the orbit of the statute may include offenses not inherently entailing moral turpitude, then the crime is not a crime involving moral turpitude." (internal quotation marks omitted)); Hamdan v. INS, 98 F.3d 183, 187 (5th Cir. 1996) ("[I]f a statute encompasses both acts that do and do not involve moral turpitude, the BIA cannot sustain a deportability finding on that statute.").

If, however, the statute of conviction contains multiple subsections, some of which encompass only conduct involving moral turpitude and some of which do not, this court may look to the record of the petitioner's conviction for the limited purpose of determining whether the petitioner was convicted

13

under a section of the statute that constitutes a crime involving moral turpitude. See Amouzadeh, 467 F.3d at 455; see also Larin-Ulloa v. Gonzales, 462 F.3d 456, 464 (5th Cir. 2006); Omari v. Gonzales, 419 F.3d 303, 308 (5th Cir. 2005).

In this case, as the majority points out, the statute under which Garcia-Maldonado was convicted, Tex. Transp. Code Ann. § 550.021, contains discrete subsections that prohibit different types of conduct, ranging from failure to provide an address or insurance information to failure to render aid to an injured person. The majority therefore looks to the record of Garcia-Maldonado's conviction and determines that he was convicted of failure to stop and render aid to an injured person. To this point, I have no serious disagreement with the majority's analysis.[2]

The majority's crucial error is at the next step of its analysis. The majority concludes that failure to stop and render aid is "intrinsically wrong," "morally reprehensible and contrary to the accepted rules of morality in our society," and is therefore a crime involving moral turpitude. The majority's

---

[2]Because, as I explain below, failure to stop and render aid, the most serious offense encompassed within section 550.021, is not regarded by Texas courts as a crime involving moral turpitude, it is technically unnecessary for the majority to look to Garcia-Maldonado's record of conviction to determine which subsection of the statute formed the basis for his conviction.

pronouncement has a visceral appeal to it, and were this court considering the issue on a blank slate, I might be more willing to agree with it. But we do not write on a blank slate. A published decision of a Texas appellate court has plainly stated that failure to stop and render aid "is <u>not</u> a crime involving moral turpitude <u>per</u> <u>se</u>." <u>Tate v. State Bar of Texas</u>, 920 S.W. 2d 727, 729 (Tex. App. — Houston [12th Dist.] 1996, writ denied). <u>Tate</u> involved an attorney disbarment proceeding,[3] and the court was presented with the question of whether failure to stop and render aid to an injured person — the same offense for which Garcia-Maldonado was convicted — is a crime involving moral turpitude. The <u>Tate</u> court squarely concluded that this crime does not <u>per</u> <u>se</u> involve moral turpitude, because a person could commit the offense under circumstances that do not involve moral turpitude. <u>Id.</u> at 729.

The majority acknowledges <u>Tate</u>, but ultimately determines that <u>Tate</u> is irrelevant to our inquiry under the categorical approach because the Texas court went on to look at the underlying facts to determine whether the offense was a crime

---

[3]Under Texas law, disbarment is mandatory if an attorney is convicted of a felony involving moral turpitude. <u>Id.</u> at 728.

involving moral turpitude.[4] What the majority fails to recognize, however, is that the <u>Tate</u> court's threshold inquiry into whether failure to stop and render aid involves moral turpitude <u>per</u> <u>se</u> is functionally identical to our categorical approach. Accordingly, <u>Tate</u> is highly relevant to, if not dispositive of, our inquiry. The majority's failure to recognize this leads it to reach a result that demonstrably conflicts with the <u>Tate</u> court's interpretation of its own law.

As an intermediate appellate court decision, <u>Tate</u>, of course, does not bind us absolutely. But it is highly relevant, persuasive authority that strongly indicates that the Texas courts do not view failure to stop and render aid as a <u>per</u> <u>se</u> crime involving moral turpitude. Absent a substantial reason for departure, which the majority has not provided, I would respect and adhere to the <u>Tate</u> court's interpretation of Texas law, and I would conclude that, under the Texas statute, failure to stop and render aid is not categorically a crime involving moral turpitude. Accordingly, I would reverse the decision of the Board of Immigration Appeals and remand for

---

[4]The <u>Tate</u> court ultimately concluded that the actions of the attorney in that case did, in fact, involve moral turpitude, because, in contrast to this court's categorical approach, Texas courts are permitted to consider the facts underlying the conviction when determining whether a conviction involves moral turpitude. <u>Id.</u> at 729-30.

16

further proceedings.