REAVLEY, Circuit Judge:
Alien Filogonio Garcia-Maldonado (Garcia) seeks review of the Bureau of Immigration Appeals (BIA) final order affirming the Immigration Judge’s (IJ’s) determination that Garcia’s hit-and-run conviction under the Texas Transportation Code qualifies as a crime involving moral turpitude, rendering him ineligible for discretionary relief from removal. The Government questions our jurisdiction to entertain this appeal. We do have jurisdiction and, for the following reasons, affirm.
I. Background
Garcia, a native and citizen of Mexico, legally entered the United States in 1964. After his admission, Garcia was convicted of two crimes under Texas law: by guilty plea in 1994 of assault with a deadly weapon and by jury conviction in 1998 of failure to stop and render aid following a fatal auto accident in which he was involved. Garcia later left the United States and, when he returned in 2000, he was charged as an inadmissible arriving alien. The IJ found Garcia removable on the basis of the two aforementioned convictions, deeming both crimes aggravated felonies. The IJ also found that the 1994 assault conviction was for a crime involving moral turpitude (CIMT) and implied without expressly stating that the 1998 conviction was for a CIMT as well. Garcia appealed to the BIA.
Garcia did not challenge his removability on appeal, but did appeal the IJ’s determination that he was ineligible to apply for a waiver of deportation under former INA § 212(c) because the 1998 failure-to-stop conviction did not meet the criteria for discretionary relief under that section under INS v. St. Cyr.[1] Garcia sought to *287 eliminate the 1998 crime from consideration as a removable offense, arguing that the failure-to-stop conviction was neither a CIMT nor an aggravated felony and was not a conviction for immigration purposes because it was on appeal. The BIA held that, because a vacated conviction remains a conviction for immigration purposes under Fifth Circuit law, the failure-to-stop conviction likewise remained a conviction, whether on appeal or not. The BIA did not rule on whether the failure-to-stop conviction was an aggravated felony, deeming Garcia removable without such a finding because the failure-to-stop conviction was for a CIMT.
II. Whether we have jurisdiction over Garcia’s case.
This case reaches us having been filed as a habeas action in the district court and transferred and converted to a petition for review to this court pursuant to the REAL ID Act. Pub.L. No. 109-13, 119 Stat. 231, 311, § 106(c). The Act amended 8 U.S.C. 1252(a)(2)(C) to preclude judicial review of the BIA’s determination that an alien is ineligible for discretionary relief based on, inter alia, commission of a CIMT. See Pub.L. No. 109-13, 119 Stat. 231, 310 § 106(a)(l)(A)(ii). However, we retain jurisdiction to review constitutional claims and questions of law associated with the claim for discretionary relief. See 8 U.S.C. § 1252(a)(2)(D). Because the issue of whether Garcia’s failure-to-stop conviction involves a CIMT is a purely legal question, we have jurisdiction to consider the petition. Rodriguez-Castro v. Gonzales, 427 F.3d 316, 319 (5th Cir.2005).
III. Whether Garcia’s 1998 conviction was for a crime involving moral turpitude.
An alien who has been convicted of a crime of moral turpitude is inadmissible. See 8 U.S.C. § 1182(a)(2)(A)(i)(I). Under 8 U.S.C. § 1227(a)(2)(A)(i)(I), such inadmissible aliens are deportable. “The INA does not define the term ‘moral turpitude’ and legislative history does not reveal congressional intent regarding which crimes are turpitudinous.” Rodriguez-Castro, 427 F.3d at 319-20 (internal quotations and citations omitted). “Instead, Congress left the interpretation of the CIMT provision to the BIA and interpretation of its application to state and federal laws to the federal courts.” Id. The question before us is whether failure to stop and render aid under section 550.021 of the Texas Transportation Code is a CIMT for immigration purposes. We conclude that it is.
We have not previously considered whether failure to stop and render aid is a CIMT and find no case in which other circuit courts or the BIA have analyzed this question. The immigration regulations provide only that a CIMT is an offense that is both (1) a crime in the jurisdiction of occurrence, and (2) a crime of turpitude per the “moral standards generally prevailing in the United States.” 22 C.F.R. § 40.21(a)(1) (2006). Although, the State Department’s Foreign Affairs Manual has a lengthy list of CIMTs, no mention is made of failure to stop and render aid. See 9 FAM 40.21(a) Note 2.
*288 In cases determining whether other offenses are CIMTs, we have referred to the fact that the BIA, through its administrative decisions, has interpreted and defined “crime involving moral turpitude” as follows:
Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.
Rodriguez-Castro, 427 F.3d at 320 (citing Hamdan v. INS, 98 F.3d 183, 186 (5th Cir.1996) (quoting the BIA’s decision in that case)). We give Chevron[2] deference to the BIA’s interpretation of the INA when appropriate, but we review de novo the BIA’s interpretation and evaluation of state law in deciding whether a particular state law offense is a CIMT. Rodriguez-Castro, 427 F.3d at 320.
In our de novo interpretation and evaluation of a state law, we look to the statutory text as interpreted by the state’s courts, without regard to the particular circumstances surrounding the specific offender’s violation. Id.) Okabe v. INS, 671 F.2d 863, 865 (5th Cir.1982) (“Whether a crime involves moral turpitude depends on the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression.”). When applying this categorical approach, the statute must be read at the minimum criminal conduct necessary to sustain a conviction under the statute. Rodriguez-Castro, 427 F.3d at 320. Thus, as a general rule, a statute that encompasses both acts that do and do not involve moral turpitude cannot be the basis of a removal determination under the categorical approach. Id. (citations omitted). “An exception to this general rule is made if the statute is divisible into discrete subsections of acts that are and those that are not CIMTs.” Smalley v. Ashcroft, 354 F.3d 332, 336 (5th Cir.2003) (quoting Hamdan, 98 F.3d at 187). In this situation, we look to the alien’s record of conviction to determine whether he has been convicted of a subsection that qualifies as a CIMT. Id.
Garcia was charged with and convicted of violating Texas Transportation Code § 550.021, which provides, in pertinent part, as follows:
(a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:
(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and
(3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.
Section 550.023 of the Code, in turn, sets forth the following requirements:
*289 The operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:
(1) give the operator’s name and address, the registration number of the vehicle the operator was driving, and the name of the operator’s motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;
(2) if requested and available, show the operator’s driver’s license to a person described by Subdivision (1); and
(3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.
Where an offense includes alternative means of commission, and one range of conduct is not necessarily contrary to accepted rules of morality, that conviction will not involve moral turpitude unless the record of conviction demonstrates that the guilt there was for reprehensible conduct. Although the above statute in section 550.023 could be read to require proof of both failure to share information and render aid, Texas courts have held otherwise. Sheldon v. State.[3] In the present case, looking to the record of conviction, we see that Garcia was indicted for being involved in an accident resulting in death and intentionally and knowingly leaving the scene and failing to stop and render aid. And the judgment of conviction states that Garcia was convicted of the felony offense of “failure to stop and render aid.”
The remaining question, then, is whether failure to stop and render aid is a CIMT. Urging us to look to the judicial interpretation of the statute by the state’s courts, Garcia relies on a Texas court of appeals decision in which the court required more than evidence of the violation of section 550.021 to justify disbarment of an attorney. Tate v. State Bar of Texas[4]. The Texas statute does make disbarment mandatory if the attorney is convicted of a felony involving moral turpitude. But the Texas Courts do not stop with the conviction itself and proceed to decide whether the attorney’s actions reflect adversely on his moral fitness to continue in the practice of law, considering “the circumstances surrounding the commission of the crime, and should review the record from the underlying criminal proceeding.” Id. (citing Turton v. State Bar of Texas,[5] (“[I]n this kind of case involving disciplinary action, the trier of fact should examine the totality of the circumstances, including any mitigating circumstances.”)). Our decision here does not bear on the fitness of Garcia to practice a profession; it is to decide only the record of his conviction and whether the federal statute makes him ineligible for waiver of removal for that reason.
Garcia also points to Rodriguez-Castro in which we held that an alien’s Texas conviction for attempted misdemeanor child abandonment with intent to return for the child was not a CIMT. 427 F.3d at 321-24 (analyzing Tex. Pen.Code §§ 15.01, *290 22.041(b) & (d)(1)). The Rodriguez-Castro court reasoned that, under the statute, abandoning a child can occur without the requisite knowledge or thought that there is anything wrong with it (e.g. mother leaves child briefly unattended to ask neighbor for sugar). Id. at 322. Here, contrary to the penal statute at issue in Rodriguez-Castro, no such potential mitigating mindset (“intent to return”) is written into section 550.21 and we are precluded from hypothesizing beyond Garcia’s record of conviction. Because Garcia was charged and convicted of intentionally leaving the scene of a serious accident, it follows that he had knowledge that the accident occurred. Once a driver knows he was involved in an accident, he necessarily knows it is wrong to leave, or at the very least, to leave without attempting reasonable assistance.
We agree with the BIA’s conclusion that the failure to stop and render aid after being involved in an automobile accident is the type of base behavior that reflects moral turpitude. The subsection of section 550.21 that criminalizes failure to render aid proscribes behavior that runs contrary to accepted societal duties. Moral turpitude inheres in this crime because the offense reflects an intentional attempt to evade responsibility and is intrinsically wrong. Because Garcia’s offense under section 550.021 is both morally reprehensible and contrary to the accepted rules of morality in our society, we find it to be a CIMT for immigration purposes. Accordingly, the BIA did not err in finding that Garcia’s 1998 failure-to-stop conviction, which was ineligible for St. Cyr waiver, precluded Garcia from seeking discretionary relief from removal.
IV. Whether the BIA erred in holding that a conviction exists for immigration purposes regardless of whether a direct appeal is pending.
Garcia does not argue here that an appeal is actually pending for his 1998 failure-to-stop conviction. Instead, he seeks remand for an evidentiary hearing on the status of the appeal, the BIA having, Garcia claims, disallowed such evidence. We note that Garcia’s conviction was affirmed in October 2006, after briefing in this case was closed,[6] but find no error in the BIA’s ultimate conclusion that a then-pending appeal, if any, would have no effect.
The BIA correctly concluded that, even if on appeal, the failure-to-stop conviction remained effective for immigration purposes under our controlling precedent. The BIA relied on our original decision in Discipio v. Ashcroft (“Discipio I"),[7] for its holding that a conviction which is vacated for any purpose remains a conviction for immigration purposes. Discipio I was based on our earlier decision in2002). We recognize that Renteria-Gonzalez is inconsistent with holdings by other circuits[8] and we followed it with express reservation in the Discipio I opinion.[9]
Garcia contends that, because we vacated the panel opinion in Discipio I upon *291 denial of rehearing en banc, we have abandoned its holding and the Renteria-Gonzalez precedent. However, we vacated the Discipio I opinion because the Government modified its position and terminated deportation proceedings against Discipio because his conviction had been vacated on procedural and substantive defects, the Government bowing to the BIA’s opinion in In re Pickering,[10] See Discipio II, 417 F.3d at 449-50. In In re Pickering, noting the statute defining “conviction” for immigration purposes is silent on the effect of a vacated conviction on an alien’s immigration status, the BIA held that convictions vacated on the basis of procedural and substantive defects were not valid for purposes of immigration, while those vacated because of post-conviction events such as rehabilitation were to be given effect in immigration proceedings. 23 I. & N. Dec. 621, 624. This may be the stance of our sister circuits, but is not the law in this circuit. We must conclude that Garcia’s failure-to-stop conviction is valid for immigration purposes, regardless of whether it was on appeal at the time of the IJ and BIA determinations.
PETITION DENIED.

. See 533 U.S. 289, 326, 121 S.Ct. 2271, 2293, 150 L.Ed.2d 347 (2001), in which the Supreme Court stated that § 212(c) relief, formerly codified at 8 U.S.C. § 1182(c), "re *287 mains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.” The BIA found Garcia ineligible for § 212(c) waiver because the failure-to-stop conviction was by jury rather than plea and occurred in 1998, after § 212(c) had been repealed. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009-597.

. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

. 100 S.W.3d 497, 504 (Tex.App.—Austin 2003, pet. ref’d).

. 920 S.W.2d 727, 729 (Tex.App.—Houston [1st Dist.] 1996, writ, denied).

. 775 S.W.2d 712 (Tex.App.—San Antonio 1989, writ denied)

. See Garcia v. State, No. 13-01-393-CR, 2006 WL 3097393 (Tex.App.—Corpus Christi 2006, pet. ref'd) (mem. op., not designated for publication).

. 369 F.3d 472 (5th Cir.2004) vacated on denial of rehearing en banc by Discipio v. Ashcroft, 417 F.3d 448 (5th Cir.2005) ("Discipio II").

. See, e.g., Pickering v. Gonzales, 465 F.3d 263 (6th Cir.2006); Alim v. Gonzales, 446 F.3d 1239 (11th Cir.2006); Pinho v. Gonzales, 432 F.3d 193 (3d Cir.2005); Cruz-Garza v. Ashcroft, 396 F.3d 1125 (10th Cir.2005); Sandoval v. INS, 240 F.3d 577 (7th Cir.2001).

. 369 F.3d at 474.

. 23 I. & N. Dec. 621, 2003 WL 21358480 (BIA 2003) rev'd on other grounds Pickering v. Gonzales, 465 F.3d 263 (6th Cir.2006).