**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MIGUEL MANDUJANO-REAL,
                              *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

                              *Respondent.*

No. 06-74186

Agency No.
A91-070-275

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 10, 2008—Seattle, Washington

Filed May 22, 2008

Before: Stephen Reinhardt, M. Margaret McKeown, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Matt Adams, Esq., Northwest Immigrant Rights Project, Seattle, Washington, for the petitioner.

Peter D. Keisler, Esq., Allen W. Hausman, Esq., Brooke M. Maurer, Esq., Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

REINHARDT, Circuit Judge:

We consider whether a conviction for identity theft under Oregon Revised Statute § 165.800 is a conviction for an aggravated felony theft offense for the purposes of 8 U.S.C. § 1101(a)(43)(G) of the Immigration and Nationality Act ("INA"). We hold that it is not.

## I.  Factual and Procedural Background

Petitioner, Miguel Mandujano-Real, is a thirty-three year old native and citizen of Mexico. He entered the United States at the age of six. In 1989, at the age of fourteen, he became a lawful permanent resident.

In March 2006, the U.S. Department of Homeland Security ("DHS") commenced removal proceedings against Mandujano-Real.[1] The Government charged him with being

[1]On March 1, 2003, the functions of the former Immigration and Naturalization Service ("INS") were transferred from the Department of Justice

removable on the basis of each of two criminal convictions. First, on June 6, 2005, Mandujano-Real was convicted, and sentenced to six months, for unlawful possession of a controlled substance pursuant to Oregon Revised Statute § 475.992(4b). The Government alleged that this conviction rendered him removable under 8 U.S.C. § 1227(a)(2)(B)(i) (making removable an alien who, at any time after admission, has been convicted of an offense relating to a controlled substance). Second, that same day, Mandujano-Real was convicted, and sentenced to thirteen months, for identity theft pursuant to Oregon Revised Statute § 165.800. The Government alleged that this conviction also rendered him removable, this time under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G) (defining as an aggravated felony a theft offense for which the term of imprisonment is at least one year).

Mandujano-Real appeared pro se at his removal hearing on April 3, 2006.[2] During the hearing, Mandujano-Real admitted that he had been convicted of both crimes and conceded removability on the basis of each of his convictions. Relying on these concessions, the Immigration Judge ("IJ") sustained both charges of removability and in addition found that because Mandujano-Real's identity theft conviction was for an aggravated felony he was also ineligible for relief in the form of cancellation of removal.[3] The IJ ordered Mandujano-Real removed to Mexico.

_____

to three agencies (the U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services) in the newly formed Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

[2]Mandujano-Real was previously granted two, week-long continuances so that he could obtain counsel for the proceedings. The IJ informed him, however, that at the April 3 hearing he would have to respond to the charges, whether he was represented or not. He was unable to obtain counsel in time for the April 3 hearing.

[3]A lawful permanent resident is eligible for cancellation of removal if he "(1) has been an alien lawfully admitted for permanent residence for

Mandujano-Real filed a pro se appeal to the Board of Immigration Appeals ("BIA" or "Board"). On appeal, Mandujano-Real challenged only the IJ's determination that he was removable on the ground that his identity theft conviction constituted an aggravated felony theft offense and that he was therefore ineligible for cancellation of removal. He did not contest that he was removable for the offense of possessing a controlled substance. The BIA summarily affirmed the decision of the IJ. *See* 8 C.F.R. § 1003.1(e)(4).[4]

Mandujano-Real, now represented by counsel, renews before us his argument that an identity theft conviction under Oregon Revised Statute § 165.800 is not a conviction for an aggravated felony theft offense under 8 U.S.C. § 1101(a)(43)(G) of the INA. Although we lack jurisdiction to review a final order of removal based upon an aggravated felony conviction, *see* 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to determine whether a conviction constitutes an aggravated felony as a matter of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1024-25 (9th Cir. 2005) (exercising jurisdiction to determine whether an alien's conviction qualifies as an aggravated felony). We review this legal question de novo. *Id.* at 1025.

## II.   Discussion

### A.

As a preliminary matter, we reject the Government's request that we remand for the BIA to decide in the first

---

not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." *See* 8 U.S.C. § 1229b(a)(1)-(3).

[4]Where, as here, the BIA summarily affirms the opinion of the IJ, we review the IJ's decision as the final agency determination. *See Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004).

instance whether Mandujano-Real's conviction constitutes an aggravated felony theft offense. The Government contends that a remand is appropriate in order to afford the Board an opportunity to clarify the basis upon which it summarily affirmed the IJ's decision. We agree that the BIA's use of its summary affirmance procedure makes it difficult for us to discern whether the Board affirmed the IJ's decision on the basis of Mandujano-Real's pro se concession or because, notwithstanding his concession, it independently reached the conclusion that Mandujano-Real's identity theft conviction was an aggravated felony. *See, e.g.*, *Lanza*, 389 F.3d at 919 (explaining that when the BIA uses its summary affirmance procedure, "it endorses the result but not necessarily the reasoning of the IJ . . . . [and may] affirm the IJ's decision based on different reasons than those set forth by the IJ") (internal citation and quotation marks omitted). We disagree, however, that any lack of clarity in this case requires a remand.

The Government does not argue, nor could it, that the IJ's reliance on Mandujano-Real's concession would suffice as a basis for removal if the BIA or the court were to determine that his conviction does not, as a matter of law, constitute an aggravated felony. *See, e.g.*, *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 844 n.4 (9th Cir. 2003) (explaining that an alien's "belief about the nature of his offense is irrelevant to the purely legal question of how the offense was categorized . . . . The INS's contention that [the alien] is bound by [his counsel's admission] must fail"); *see also Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886 (9th Cir. 2003) (rejecting Government's argument that "Huerta waived her ability to challenge deportability before the BIA by conceding that she was removable"). We are not willing to assume that the BIA may have affirmed the IJ's decision on a ground that is directly contrary to well-established law.

**[1]** The only question before us is, therefore, whether as a matter of law Mandujano-Real's identity theft conviction constitutes an aggravated felony theft offense. The answer to this

question lies in the interpretation of an Oregon criminal statute: this is a matter that is not committed to the BIA's expertise. Accordingly, we owe no deference to the BIA's resolution of this question on appeal. *See, e.g.*, *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1133 (9th Cir. 2006) (en banc); *Garcia-Lopez*, 334 F.3d at 843 (explaining that because the BIA does not "administer[ ] or ha[ve] any particular expertise in interpreting [state criminal statutes], no deference is accorded to the BIA's interpretation"). Thus, even if we were to remand this question to the Board, "we would not 'later determine whether [the BIA's] decision exceeds the leeway that the law provides.' " *Fernandez-Ruiz*, 466 F.3d at 1134 (quoting *INS v. Ventura*, 537 U.S. 12, 17 (2002)). Rather, we would review the Board's determination de novo and without deference. Under these circumstances, a remand would be of no purpose and would lead to an unnecessary expenditure of time and resources. *Cf. Lanza*, 389 F.3d at 932 (remanding for clarification of whether BIA's summary affirmance was based on a reviewable or unreviewable ground where doing so "would [ ] avoid the unnecessary expenditure of time and effort [and] forestall the possibility of issuing a nondispositive opinion"). Neither case law nor common sense dictates such a result.[5] We therefore decline the Government's request for a remand and turn to the only actual legal issue presented in this case.

## B.

[2] To determine whether Mandujano-Real's identity theft conviction constitutes an aggravated felony theft offense under 8 U.S.C. § 1101(a)(43)(G), we apply the analysis set

---

[5]The futility of a remand in the present case is further illustrated by the fact that there is now no dispute among the parties (or the court) as to the proper resolution of the legal question. As we explain *infra*, the Government now concedes that Mandujano-Real's conviction was not for an aggravated felony and, for the reasons set forth below, we agree with that position.

forth in *Taylor v. United States*, 495 U.S. 575, 598 (1990). *See Li v. Ashcroft*, 389 F.3d 892, 895 (9th Cir. 2004). Our first task is to conduct a categorical comparison of the generic definition of a "theft offense" and the elements of Oregon's identity theft statute. *See, e.g.*, *Martinez-Perez*, 417 F.3d at 1025-26; *Randhawa v. Ashcroft*, 298 F.3d 1148, 1152-54 (9th Cir. 2002). If there is a match, such that the "full range of conduct covered by [Oregon's identity theft statute] falls within the meaning" of a generic theft offense, then Mandujano-Real's crime constitutes an aggravated felony. *Martinez-Perez*, 417 F.3d at 1026 (internal citation and quotation marks omitted). If there is not a "categorical" match, we sometimes proceed to the modified categorical approach, whereby we "conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002). The Government does not suggest that we do so in this case. *See also Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc). We therefore consider only whether the categorical approach is satisfied.

**[3]** The INA defines an aggravated felony as "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). The generic definition of a "theft offense" is "[1] a taking of property or an exercise of control over property [2] without consent [3] with the criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc) (quoting *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001)); *see also Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 820 (2007) (citing with approval Ninth Circuit's definition of generic theft offense).

**[4]** Oregon's identity theft statute provides, *inter alia*, that:

(1)   A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.

. . . .

(4)   As used in this section:

(a)   "Another person" means a real person, whether living or deceased, or an imaginary person.

Or. Rev. Stat. § 165.800.

[5] As the Government concedes, Oregon's identity theft statute plainly encompasses conduct not comprehended within the scope of a generic theft offense. First, and perhaps most obviously, the Oregon statute is broader than the generic definition of a theft offense because it extends to the creation and use of fictitious identities. Oregon law criminalizes the obtaining, possession, transfer, creation, utterance or conversion of the personal identification of "an imaginary person." Or. Rev. Stat. § 165.800(4)(a). As a result, an individual may be convicted under the Oregon law if, for example, he possesses a fake social security card containing a fabricated social security number. *See* Or. Rev. Stat. § 165.800(4)(a); *see, e.g.*, *State v. Porter*, 108 P.3d 107, 109 (Or. Ct. App. 2005) (defendant convicted under section 165.800 for creating what appeared to be templates for Oregon identification cards or driver's licenses). In such case, none of the elements of the generic theft offense is satisfied. There is no "taking of property or [ ] exercise of control over property" because a false social security number belongs to, and is therefore the property of, no one. *Corona-Sanchez*, 291 F.3d at 1205 (internal citation omitted). Similarly, lack of consent is missing because a false social security number has no rightful "owner" whose consent the offender failed to receive before

placing the number on a fake card. *Id.* (listing "without consent" as an element of a generic theft offense). Finally, for the same reason, the offender's intent in using such a number cannot be to "deprive [an] owner of the rights and benefits of ownership." *Id.* The same is true, of course, with respect to using the identities of dead persons, also a violation under the statute. *See* OR. REV. STAT. § 165.800(4)(a).

**[6]** Second, even if a living person's identity is involved, the Oregon law still encompasses conduct that is broader than that proscribed by the generic theft definition — conduct that does not constitute theft. For example, a person may be convicted under the law even if the owner of the identity consents to or participates in the identity fraud by encouraging his friend to use the owner's alien identification number on a job application. A defendant may also be convicted under Oregon's identity theft provision if he uses another's home address in order to secure the enrollment of his child in a particular school or to obtain a residential parking permit. OR. REV. STAT. § 165.800(4)(b)(A). Although such acts may be undertaken without the address owner's consent, the defendant's intent in such a case is not to defraud the homeowner but to deceive the city into providing a benefit to which he would otherwise not be entitled. An intent to deceive a third party by using another's address is not akin to an intent to deprive the *owner* of the property of the rights and benefits to which his ownership entitles him.

**[7]** Because Oregon's identity theft statute encompasses conduct that is beyond the scope of the generic definition of a theft offense, we hold that Mandujano-Real's conviction under that law is not categorically an aggravated felony for the purposes of 8 U.S.C. § 1101(a)(43)(G).

## III. Conclusion

**[8]** Having determined that Mandujano-Real's identity theft conviction is not for an aggravated felony offense, there is the

question of a remedy. Mandujano-Real remains removable for his controlled substance conviction, a ground of removability that he did not challenge either before the BIA or this court. Unlike an aggravated felony offense, Mandujano-Real's controlled substance conviction does not render him ineligible for relief in the form of cancellation of removal. *See* 8 U.S.C. § 1229b(a)(1)-(3). We therefore grant the petition for review and remand for the agency to provide Mandujano-Real with an opportunity to apply for cancellation of removal.

**GRANTED and REMANDED.**