**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IKUVALU MOLOU LATU,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

No. 05-75889

Agency No.
A46-960-902

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 2, 2007
Honolulu, Hawaii
Submission Vacated and Deferred November 6, 2007
Resubmitted April 18, 2008

Filed November 3, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge O'Scannlain

15019

**COUNSEL**

Ramon J. Ferrer, Wailuku, Hawaii, for the petitioner.

Kathryn L. Moore, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

TASHIMA, Circuit Judge:

Ikuvalu Latu, a native and citizen of Tonga, petitions for review of a decision of the Board of Immigration Appeals ("Board" or "BIA"), dismissing his appeal from an order of an Immigration Judge ("IJ"). The IJ found Latu removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) for being convicted of a crime involving moral turpitude ("CIMT"). Latu was convicted in 2003 of a violation of Hawaii Revised Statute § 291C-12.5, which requires a driver involved in an accident resulting in substantial injury to remain at the scene of the

accident, provide certain information, and render assistance as required by Hawaii Revised Statute § 291C-14.

After hearing oral argument, we deferred submission pending this court's decision in *Cerezo v. Mukasey*, 512 F.3d 1163 (9th Cir. 2008). *Cerezo* held that a conviction under a California statute nearly identical to the Hawaii statute at issue here was not a CIMT. We now follow *Cerezo* and hold that Latu's conviction is not a CIMT. We therefore grant Latu's petition. We have jurisdiction pursuant to 8 U.S.C. § 1252(a).

## I.

Latu was admitted into the United States in 1999. In 2003, he was convicted of violating Hawaii Revised Statute § 291C-12.5. The Department of Homeland Security subsequently served Latu with a Notice to Appear, charging him with removability for having committed a CIMT within five years of his admission into the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(i).

Latu sought termination of the proceedings on the basis that his conviction was not for a CIMT. The IJ denied the motion and ordered Latu removed to Tonga.

Latu appealed to the BIA. The Board stated that leaving the scene of an accident without rendering aid to an injured person was "inherently depraved and contrary to the accepted rules of morality." It reasoned that the failure to aid someone injured in the accident demonstrated "an indifference to the duties owed between persons or to society in general." The BIA therefore found that Latu's offense was a CIMT and dismissed Latu's appeal.

## II.

"When the BIA conducts an independent review of the IJ's findings we review the BIA's decision and not that of the IJ."

*Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006). Whether a state statutory crime constitutes a CIMT is a decision of law reviewed de novo. *Blanco v. Mukasey*, 518 F.3d 714, 718 (9th Cir. 2008). "The government has the burden to prove 'by clear and convincing evidence' that an alien is removable." *Sinotes-Cruz*, 468 F.3d at 1194 (quoting 8 U.S.C. § 1229a(c)(3)(A)). Because "the BIA's decision in this case was neither published nor marked as precedential[,] . . . the applicable standard of review is the *Skidmore* 'power to persuade' standard." *Estrada-Rodriguez v. Mukasey*, 512 F.3d 517, 520 (9th Cir. 2007) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In addition, "[a]lthough the BIA's order cited several published BIA decisions, none of them sets forth a binding interpretation of the question at issue," *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006), or even addresses the question at issue here.

## III.

**[1]** In determining whether a conviction is a CIMT for removability purposes, "we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575, 599-602 (1990)." *Blanco*, 518 F.3d at 718 (footnote omitted). "Under the categorical approach, a crime involves moral turpitude if the generic elements of the crime show that it involves conduct that '(1) is base, vile, or depraved and (2) violates accepted moral standards.' " *Id.* (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1068 (9th Cir. 2007) (en banc)). A crime that involves fraud also may "fall into the definition of crimes involving moral turpitude." *Id.* In order to constitute a CIMT under the categorical approach, the "full range of conduct encompassed by the statute [must] constitute[ ] a crime of moral turpitude." *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007).

## A.

Hawaii Revised Statute § 291C-12.5(a) provides that "[t]he driver of any vehicle involved in an accident resulting in sub-

stantial bodily injury to any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible," and "remain at the scene of the accident until the driver has fulfilled the requirements of [Haw. Rev. Stat. §] 291C-14." Section 291C-14 provides as follows:

(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give the driver's name, address, and the registration number of the vehicle the driver is driving, and shall upon request and if available exhibit the driver's license or permit to drive to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give such information and upon request exhibit such license or permit to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of the person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person; provided that if the vehicle involved in the accident is a bicycle, the driver of the bicycle need not exhibit a license or permit to drive.

(b)  In the event that none of the persons specified is in condition to receive the information to which they otherwise would be entitled under subsection (a), and no police officer is present, the driver of any vehicle involved in the accident after fulfilling all other requirements of section . . . 291C-12.5 . . . insofar as possible on the driver's part to be performed, shall forthwith report the accident to the

nearest police officer and submit thereto the infor-
mation specified in subsection (a).

Haw. Rev. Stat. § 291C-14.

In *Cerezo*, we addressed whether California Vehicle Code
§ 20001(a) is a CIMT. Section 20001(a), like § 291C-12.5,
requires a driver involved in an accident resulting in injury or
death to stop and fulfill the reporting requirements of Califor-
nia Vehicle Code §§ 20003 and 20004.[1]

**[2]** *Cerezo* reasoned that, under the plain language of Cali-
fornia Vehicle Code § 20001, "a driver in an accident result-
ing in injury who stops and provides identification, but fails
to provide a vehicle registration number, has violated the stat-
ute." 512 F.3d at 1167. Because "[t]he failure to provide a
vehicle registration number under such circumstances is not
base, vile and depraved; nor does it necessarily evince any
willfulness or evil intent," we concluded that the petitioner's
conviction was not a CIMT. *Id.*

**[3]** As in *Cerezo*, a driver may violate § 291C-12.5 merely
by failing to provide all the information required by § 291C-
14. Thus, "the state statute plainly and specifically criminal-
izes conduct outside the contours of the federal definition."

---

[1]Section 20003 requires the driver of a vehicle involved in an accident
resulting in injury or death to

give his or her name, current residence address, the names and
current residence addresses of any occupant of the driver's vehi-
cle injured in the accident, the registration number of the vehicle
he or she is driving, and the name and current residence address
of the owner to the person struck or the driver or occupants of
any vehicle collided with, and shall give the information to any
traffic or police officer at the scene of the accident. The driver
also shall render to any person injured in the accident reasonable
assistance . . . .

Cal. Vehicle Code § 20003(a). Section 20004 further requires that, in the
event of death, the driver shall report the accident to law enforcement.

*Id.* In fact, Hawaii Revised Statute § 291C-14 goes further than California Vehicle Code § 20003, requiring that, if no one at the scene of the accident is in condition to receive the name, address, and vehicle registration information, and no police officer is present, the driver must "forthwith report the accident to the nearest police officer and submit thereto the information specified in subsection (a)." Haw. Rev. Stat. § 291C-14(b). Thus, in Hawaii, a driver involved in an accident involving injury who stops and renders assistance to the injured person, but later fails to give all the requisite information to a police officer has nonetheless violated the statute.

After concluding that the California statute criminalized conduct that was not categorically a CIMT, *Cerezo* further considered "whether California courts have interpreted the scope of § 20001(a) more narrowly so as to make it applicable only to conduct which involves moral turpitude." 512 F.3d at 1167-68. Although one California appellate court case had speculated that a violation of § 20001 might indicate moral turpitude, other cases had held that a failure to provide all the requisite information constituted a violation of the statute. We therefore held that "§ 20001(a) does not categorically involve moral turpitude." *Id.* at 1169.

**[4]** Hawaii cases similarly indicate that the failure to give all the information required by § 291C-14 constitutes a violation of § 291C-12.5.[2] *See, e.g.*, *State v. Chen*, 884 P.2d 392, 400 (Haw. Ct. App. 1994) (addressing the predecessor statute to § 291C-12.5 and stating that "[t]he statutory language is broad, hinging criminal liability *for failing to give information* and to render aid on involvement in the incident" (emphasis added)); *State v. Gartrell*, 828 P.2d 298, 299-300 (Haw. Ct.

---

[2]Although the dissent asserts that Hawaii case law narrows the applicability of the statute, Dissenting op. at 15034, it cites no Hawaii case to support this assertion. The Hawaii cases we rely on clearly indicate that the statute is interpreted broadly to penalize the failure to give *any* of the requisite information.

App. 1992) (stating that one of the ways the State could prove that the defendant violated §§ 291C-13 and -14 was to prove that the defendant "failed to give the person attending the property and any police officer at the scene certain information required by the statute"). As in *Cerezo*, the failure following an accident to give an address or a vehicle registration number "is not base, vile and depraved; nor does it necessarily evince any willfulness or evil intent, a requisite element of crimes of moral turpitude." *Cerezo*, 512 F.3d at 1167; *cf. Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 747 (9th Cir. 2008) (stating that a statute requiring a sex offender to register with local law enforcement was a " 'strict liability crime that does not require any showing of scienter' " and therefore " 'lack[ed] the requisite element of willfulness or even intent' " to be a base or depraved act (quoting *Quintero-Salazar*, 506 F.3d at 693)).

**[5]** Thus, "the state statute plainly and specifically criminalizes conduct outside the contours of the federal definition." *Cerezo*, 512 F.3d at 1167. Because the full range of conduct encompassed by the Hawaii statute does not constitute a CIMT, Latu's offense is not categorically a CIMT.[3]

## B.

**[6]** The government argues in the alternative that Latu's offense is a CIMT because it involves fraud. "A crime involves fraudulent conduct, and thus is a crime involving moral turpitude, if intent to defraud is either 'explicit in the statutory definition' of the crime or 'implicit in the nature' of the crime." *Blanco*, 518 F.3d at 719 (quoting *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993)). Intent to defraud is not explicit in the statutory definition of Latu's offense; nor is it implicit in the nature of the crime.

---

[3]The BIA did not follow the categorical approach, instead focusing on only one clause in the statute.

**[7]** "[I]n order to be inherently fraudulent, a crime must involve knowingly false representations made in order to gain something of value." *Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J., concurring for a majority of the court). *Navarro-Lopez* explicitly stated that "[t]he type of benefit at issue in fraud cases is not the evasion of criminal penalties, but rather something more tangible, such as money, a passport, naturalization papers, or an occupational deferment from military service." *Id.* at 1077 (citations omitted). "When the only 'benefit' the individual obtains is to impede the enforcement of the law, the crime does not involve moral turpitude." *Blanco*, 518 F.3d at 719. Latu's offense does not involve knowingly false representations in order to gain something of value.[4] Instead, a driver may violate the statute merely by failing to provide all the requisite information.

In *Blanco*, we addressed a violation of a California statute criminalizing the provision of false information to an officer to evade the process of the court or the proper identification of the person. *Id.* at 718. We held that the statute did not require fraudulent intent and therefore was not a crime involving moral turpitude. *Id.* at 720. Although the crime violated a duty to society to obey the law and not to impede the investigation of crime, it did not require an intent to obtain something tangible. *Id.* at 719-20.

The purpose of a statute such as § 291C-12.5 is to " 'facilitate a determination of civil and criminal liability.' " *Chen*, 884 P.2d at 400 (quoting *Wylie v. State*, 797 P.2d 651, 657 (Alaska Ct. App. 1990)). Thus, similar to *Blanco*, the statute imposes a duty to society not to impede a finding of liability, but it does not require an intent to obtain something tangible.

---

[4]The dissent argues that implicit in the failure to provide information is an attempt to "evade . . . civil liability." Dissenting op. at 15036. But this assertion is purely speculative and does not establish that the offense is inherently fraudulent. For starters, the statute's reporting requirement applies regardless of whether the party required to make the report is the party at fault, *i.e.*, the party liable for damages.

**[8]** Section 291C-12.5 on its face does not involve fraud. As in *Blanco*, the statute does not require an intent to "obtain something tangible" or to "induce another to act to his or her detriment." 518 F.3d at 719. Nor does it require "a showing of specific intent to avoid arrest." *Id.* at 720. In fact, as in *Plasencia-Ayala*, "there is no state of mind requirement" at all. 516 F.3d at 747; *see State v. Melemai*, 643 P.2d 541, 545 (Haw. 1982) (describing § 291C-14 as "essentially regulatory and not criminal"). There is no intent to defraud requirement in the statute. We therefore reject the government's argument that the statute is a CIMT because it involves fraudulent conduct.[5]

### C.

The government asks us to remand for the BIA to determine whether Latu's offense qualifies as a CIMT under the modified categorical approach, citing *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam). However, "*Ventura* has nothing to do with a case such as this." *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007); *see also Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132-35 (9th Cir. 2006) (en banc) (explaining why *Ventura* did not apply and proceeding to the modified categorical approach).

In *Fernandez-Ruiz*, we declined the government's request to remand for the BIA to consider whether the petitioner's state offense was a crime of violence under the modified categorical approach. 466 F.3d at 1132-35. We distinguished *Ventura*, in which the Supreme Court required remand for the agency to consider evidence of changed country conditions that the BIA had not considered when it denied the asylum

---

[5]The dissent implies that the overall burden is on Latu by selectively quoting language from *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007). *See* Dissenting op. at 15037-38. We emphasize, however, that it is the government that bears the burden of proving removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A).

application. *See Ventura*, 537 U.S. at 15. In contrast to *Ventura*, where the State Department report of country conditions was ambiguous, and new evidence of country conditions may have developed since the BIA's decision, *Fernandez-Ruiz* involved unambiguous documents of conviction that were available prior to the commencement of removal proceedings. 466 F.3d at 1133. Moreover, unlike in *Ventura*, the interpretation of a state criminal statute was not an issue committed to the agency's expertise, and the BIA already had considered whether the petitioner's offense was a crime of violence. *Id.* at 1133-34; *see also Ruiz-Vidal*, 473 F.3d at 1080 (calling the government's request to remand under *Ventura* "misplaced," because "the record on remand would consist only of those documents already in the record," no further agency expertise was required to determine removability, and the BIA already had considered the issue).

**[9]** Similar to *Fernandez-Ruiz* and *Ruiz-Vidal*, the BIA already has considered whether Latu's offense is a CIMT, and all of the evidence regarding his conviction has been presented to the BIA. Also similar to those two cases, this case involves the interpretation of a state statute, rather than a question committed to the agency's expertise, such as changed country conditions. *Ventura* accordingly is inapposite.

**[10]** Finally, where, as here, the government has not asked us to apply the modified categorical approach, we "consider only whether the categorical approach is satisfied." *Mandujano-Real v. Mukasey*, 526 F.3d 585, 589 (9th Cir. 2008). Because the categorical approach is not satisfied, we grant the petition. *See id.* at 591 (granting the petition and remanding for the agency to provide an opportunity to apply for cancellation of removal). The petition for review is

**GRANTED.**

O'SCANNLAIN, Circuit Judge, dissenting:

Today the court holds that Hawaii's hit-and-run statute does not define a crime involving moral turpitude for purposes of removal under the immigration laws. With respect, I believe the majority arrives at its counter-intuitive holding by misapplying three of our precedents, and therefore I must dissent.

This case turns on whether Latu's conviction for violating Hawaii Revised Statutes section 291C-12.5 amounts to a crime involving moral turpitude, providing grounds for removal under 8 U.S.C. § 1227(a)(2)(A)(i). Haw. Rev. Stat. section 291C-12.5 (which incorporates section 291C-14 by reference) is violated if either (1) a driver involved in an accident fails to stop and to provide certain information[1] or (2) a driver fails to stop and to provide reasonable assistance to an injured driver. Although the majority does not say so explicitly, it is unlikely that its members would disagree with me that the conduct described in the *second* prong constitutes a crime involving moral turpitude under the categorical approach. The rub, therefore, is in the first prong and there I will focus my discussion.

I

The majority's first mistake is to jump to the conclusion that our reasoning in *Cerezo v. Mukasey*, 512 F.3d 1163 (9th Cir. 2008), controls this case. It is true that in *Cerezo* we held that a violation of California Vehicle Code section 20001(a), a statute substantially similar to the Hawaii statute at issue here, was not a crime involving moral turpitude under the categorical approach. *See Cerezo*, 512 F.3d at 1169. The major-

---

[1]This refers to the following specific information: "the driver's name, address, and the registration number of the vehicle the driver is driving, and . . . the driver's license or permit to drive." Haw. Rev. Stat. § 291C-14(a).

ity simply points to the similarity between the language of the two statutes as if that were conclusive. If these were federal statutes, it might be. But since these are state statutes, which "only state courts may authoritatively construe," its analysis is flawed. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 577 (1996).

To be sure, in *Cerezo* we *began* our analysis by noting that, "[r]eading section 20001(a) literally, a driver in an accident resulting in injury who stops and provides identification, but fails to provide a vehicle registration number, has violated the statute." 512 F.3d at 1167. But our analysis continued by carefully heeding the Supreme Court's recent admonition that we may not consider "a theoretical possibility[ ] that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* (internal quotation marks omitted) (citing *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 817 (2007)). Mindful of *Duenas-Alvarez*, we tentatively observed that "where, as here, the state statute plainly and specifically criminalizes conduct outside the contours of a federal definition, we do not engage in judicial prestidigitation by concluding that the statute" passes muster under the categorical approach. *Id.* at 1167.

All the same, *Cerezo*'s holding ultimately rested on our observation that "California courts have [not] interpreted the scope of section 20001(a) more narrowly so as to make it applicable only to conduct which involved moral turpitude." *Id*. at 1167-68 (citing *Gore*, 517 U.S. at 577). The majority seems to brush over the importance of this point. If California courts *had* narrowed section 20001(a), the unadulterated language of the statute would no longer have controlled—the statute would cover whatever the state's courts construed it to cover. But the state courts had in fact done the contrary in *Cerezo*. California precedent expressly holds that " '[t]he various requirements of [section 20001] are set forth in the conjunctive and omission to perform *any one of the acts* required constitutes an offense.' " *Id*. at 1168 (quoting *People v. New-*

*ton*, 66 Cal. Rptr. 3d 422, 424-25 (Ct. App. 2007)) (emphasis added). Even with this broadening, rather than narrowing, precedent, we found the "issue" in the case to be "close." *Id.* at 1168.

Here, by contrast, Hawaii case law does not similarly construe section 291C-12.5 to criminalize the failure to provide *any* of the required information. On the contrary, such precedent construes section 291C-12.5, together with section 291C-14, as requiring, in relevant part, self-identification sufficient to facilitate subsequent findings of liability. *See State v. Chen*, 884 P.2d 392, 400 (Haw. Ct. App. 1994) ("The purpose of statutes like [Haw. Rev. Stat. section 291C-12.5] . . . is to protect those injured . . . and [to] facilitate a determination of civil and criminal liability.") (final alteration in original) (internal quotation marks and citation omitted); *see also State v. Liuafi*, 623 P.2d 1271, 1282 (Haw. Ct. App. 1981) ("The information required to be given by HRS section 291C-14 . . . is information necessary to resolve questions of civil liability.").

Having focused entirely on statutory language to the exclusion of judicial construction, the majority unfortunately overlooks that the orientation of relevant state law in this case is contrary to its orientation in *Cerezo*. There, California case law broadened the applicability of the relevant statute; here, Hawaii case law narrows it. By speculating nonetheless that a defendant in Hawaii could be convicted for stopping at the scene of an accident and furnishing his name, address, and driver's license, but not his vehicle registration number, the majority engages in precisely the "legal imagination" prohibited by *Duenas-Alvarez*, 127 S. Ct. at 822. That is, it considers the theoretical possibility that Hawaiian courts would apply section 291C-12.5 beyond its established scope and purpose. Since there simply is no Hawaii precedent construing section 291C-12.5 in a manner remotely similar to the California precedent considered in *Cerezo*, I fail to see how *Cerezo* can possibly control this case.

The majority's attempt to cast doubt on the usefulness of Hawaiian precedent in construing sections 291C-12.5 and 291C-14 likewise misses the point. *See* Maj. Op. at 15027-28. Under *Duenas-Alvarez*, it is Latu's burden to point to Hawaii precedent showing that a conviction under section 291C-12.5 reasonably might be founded on conduct that falls outside the generic definition of a crime involving moral turpitude. Therefore, even if all of the foregoing Hawaii case law were not binding for some reason, Latu would still have failed to point to *any* cases construing section 291C-12.5 as narrowly as he urges us to construe it.

II

The majority missteps again in its rejection of the government's alternative argument that the first prong of Haw. Rev. Stat. section 291C-12.5 covers conduct involving moral turpitude because inherently fraudulent.

Since Hawaii's statute does not require on its face that the perpetrator had an intent to defraud, we can only infer such intent where it is "implicit in the nature of the crime." *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993) (internal quotation marks and citations omitted). As the majority correctly points out, to meet this test "the criminalized conduct must necessarily involve false representations or deceit for the purpose of gaining something of value." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1076 n.2 (9th Cir. 2007) (en banc). However, the majority seems to have a somewhat cramped view of what this actually requires.

The majority relies heavily on our decisions in *Navarro-Lopez* and *Blanco v. Mukasey*, 518 F.3d 714 (9th Cir. 2008), to support its conclusion that the failure to provide the requisite information in violation of section 291C-12.5 is not a misrepresentation for the purpose of gaining something of value. In *Navarro-Lopez*, the concurrence remarked that the benefit a perpetrator of an inherently fraudulent crime must

obtain "is not the evasion of criminal penalties, but rather something more tangible, such as money, a passport, naturalization papers, or an occupational deferment from military service." 503 F.3d at 1077 (Reinhardt, J., concurring for a majority of the court) (citations omitted) (holding that accessory after the fact is not a crime involving moral turpitude). *Blanco* reiterated the same point, stating that "[w]hen the only 'benefit' the individual obtains is to impede the enforcement of the law, the crime does not involve moral turpitude." 518 F.3d at 719 (holding that providing false identification to a police officer is not a crime involving moral turpitude). These cases are certainly useful for resolving the issue before us, but they point in a direction opposite to the one the majority pursues.

It helps to take note of the conduct Hawaii has targeted by means of sections 291C-12.5 and 291C-14. Based upon a review of state cases construing section 291C-14, it appears that the purpose of the statute's self-identification prong is to facilitate subsequent findings of civil and criminal liability. *See Chen*, 884 P.2d at 401 (citing *Wylie v. State*, 797 P.2d 651, 657 (Alaska Ct. App. 1990) (holding that an identical Alaskan statute was enacted to prevent parties to an accident from "evading liability" for the accident "by escaping before their identity can be established")). Accordingly, implicit in the nature of a defendant's failing to provide such information is that he sought to evade not just criminal liability, but also civil liability, with its associated insurance costs and damages. Thus, in contrast to the conduct considered in *Blanco* and *Navarro-Lopez*, one who leaves the scene of an accident without identifying himself has surely obtained a financial benefit.

The majority seems to think that *Blanco* and *Navarro-Lopez* require that the perpetrator obtain something he can actually hold in his hand. It is true that Judge Reinhardt's concurrence in *Navarro-Lopez* opinion used the word "tangible," but the context strongly suggests that this referred to anything of non-speculative monetary value. After all, the opinion cited

cases where the perpetrator obtained securities—nowadays often recorded in a computer instead of on a stock certificate —and even military deferment. *See Navarro-Lopez*, 503 F.3d at 1077 (Reinhardt, J., concurring) (citing cases). *Blanco* cited the same list of cases. 518 F.3d at 719 (same). Neither opinion, on which the majority so heavily relies, appears to make the distinction the majority implicitly makes between deception to obtain hard assets and deception to avoid debts and civil damages.

Or perhaps the majority does not regard the avoidance of debts as a financial benefit. Indeed, the majority's cursory treatment of this question suggests that it simply regards criminal liability and civil liability as equivalent. *See* Maj. Op. at 15029 ("Thus, similar to *Blanco*, the statute imposes a duty to society not to impede a finding of liability, but it does not require an intent to obtain something tangible."). But surely there is no controversy in the tax code's treatment of discharge of indebtedness as income, *see* 26 U.S.C. section 61(a)(12); and what is potential civil liability but a debt, discounted by the probability of its ultimately coming due? It is precisely that kind of debt the avoidance of which sections 291C-12.5 and 291C-14 criminalize. *See Chen*, 884 P.2d at 401.

The majority ends by returning to the fact that the Hawaii statute does not "on its face . . . involve fraud." Maj. Op. at 15030. This is a curious non sequitur, since the entire analysis on this issue had assumed that fact. Though its opinion is a bit confusing on this point, I suspect that the majority is worried that someone could be convicted under section 291C-12.5 without a showing of fraudulent intent. But while we might speculate that the Hawaiian government would prosecute an individual who did not have an intent to defraud—say, someone who leaves the scene of an accident to attend to an emergency—the Supreme Court has expressly foreclosed such speculation. *See Duenas-Alvarez*, 127 S. Ct. at 822 ("[T]o find that a state statute creates a crime outside the

generic definition of a listed crime in a federal statute . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."). It is, again, Latu's burden "to point to his own case or other cases in which the state courts in fact did apply the statute in [a] special (non-generic) manner." *Id.* Latu has simply failed to carry such burden.

Accordingly, I have no alternative but to conclude, contra the majority, that the first prong of section 291C-12.5 inherently requires that an individual has acted with an intent to evade civil and criminal liability for the accident. That is, it involves "deceit for the purpose of gaining something of value," *Navarro-Lopez*, 503 F.3d at 1076 n.2, and therefore categorically is a crime involving moral turpitude, s*ee Carty v. Ashcroft*, 395 F.3d 1081, 1082 (9th Cir. 2005) (concluding that "intent to evade" and "intent to defraud" are synonymous for purposes of assessing whether a statute is a crime involving moral turpitude); *see also Jordan v. De George*, 341 U.S. 223 (1951) (holding that the offense of evading liquor taxes is a crime involving moral turpitude).[2]

## III

The majority stops there, having determined that the first

---

[2]I note that *Cerezo* apparently misconstrued *Garcia-Maldonado v. Gonzales*, 491 F.3d 284 (5th Cir. 2007)*,* as holding that a Texas statute, Tex. Transp. Code Ann. section 550.021, with two prongs substantially similar to the Hawaii statute in this case, is not a crime involving moral turpitude under the categorical approach. *Cerezo*, 512 F.3d at 1169. The Fifth Circuit provided no analysis as to whether the first prong of section 550.021 was a crime involving moral turpitude, instead focusing on the second prong, which was the basis for Garcia-Maldonado's conviction. *See Garcia-Maldonado*, 491 F.3d at 289. Moreover, even if the *Cerezo* interpretation were correct, *Garcia-Maldonado* did not consider whether violating section 550.021 involves fraudulent conduct. *See id.* at 288. With respect to the first prong, therefore, *Garcia-Maldonado* is inapposite.

prong of section 291C-12.5 is not a crime involving moral turpitude. Because I disagree with that determination, I would continue the analysis to the second prong, which, to paraphrase, punishes the failure to stop and to provide reasonable assistance to an injured driver. Here I find the terrain far smoother.

"[A] crime other than fraud must be more than serious; it must offend the most fundamental moral values of society, or as some would say, 'shock[ ] the public conscience.' " *Navarro-Lopez*, 503 F.3d at 1074-75 (Reindardt, J., concurring) (final alteration in original) (quoting *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001)). "A crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent." *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (per curiam); *see also Notash v. Gonzalez*, 427 F.3d 693, 698 (9th Cir. 2005) ("[T]he word 'wilful' means no more than that the forbidden act is done deliberately and with knowledge." (internal quotation marks and citations omited)).

A conviction under section 291C-12.5 requires, at minimum, that the defendant acted with recklessness. *See* Haw. Rev. Stat. section 702-204. Accordingly, conviction under the second prong of sections 291C-12.5 and 291C-14 requires proof that the defendant knew of the likelihood that an individual in an accident might have been substantially injured, and yet consciously disregarded such risk by failing reasonably to assist such person. Indeed, a conviction may rest on a driver's failure to do so much as to stop and to check whether a person injured in the accident requires assistance. Two of our sister circuits, considering similar reckless conduct, have held that such wilful disregard of a risk of harm is sufficiently "base and depraved" as to involve moral turpitude. *See Knapik v. Ashcroft*, 384 F.3d 84, 89-90 (3d Cir. 2004) (upholding BIA determination that reckless endangerment is a crime involving moral turpitude); *Franklin v. INS*,

72 F.3d 571, 573 (8th Cir. 1995) (upholding BIA determination that involuntary manslaughter, where alien "recklessly cause[d] the death of her child by consciously disregarding a substantial and unjustifiable risk to life," is a crime involving moral turpitude).

Thus, I agree with the Fifth Circuit that the failure to confer reasonable assistance to the victim of an accident "is both morally reprehensible and contrary to the accepted rules of morality in our society." *Garcia-Maldonado*, 491 F.3d at 290. An individual involved in an accident, and who therefore knows that others may have been injured in it, owes a moral duty to stop at the scene of the accident and to provide what reasonable assistance is possible; to shirk that duty and to flee from the scene is a base and depraved act. Accordingly, I would hold failing to confer reasonable assistance to an individual injured in an accident as required by Haw. Rev. Stat. section 291C-12.5 categorically is a crime involving moral turpitude.

IV

Because both prongs of Haw. Rev. Stat. section 291C-12.5 define crimes involving moral turpitude, I would hold that the statute categorically prohibits such crimes for purposes of alien removal. Therefore, I would deny the petition for review. For the foregoing reasons, I respectfully dissent.