In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00128-CR
_____

EX PARTE LUIS CASTILLO AGUILAR

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 13-16279-A

**MEMORANDUM OPINION**

Luis Castillo Aguilar, a lawful permanent resident, appeals the trial court's decision to deny his application asking the court to issue a writ of habeas corpus. Aguilar argues that his attorney failed to properly advise him that should he plead guilty, he faced almost certain deportation. *See Padilla v. Kentucky*, 559 U.S. 356 (2010). According to Aguilar, had he received effective assistance, he would have chosen to reject the plea bargain agreement the State offered him. We conclude that the trial court could have reasonably decided that Aguilar did not receive ineffective assistance given the unsettled question regarding whether the crime he

1

committed, evading arrest or detention through the use of a vehicle, is a crime of moral turpitude. We affirm the trial court's order.

Background

In 2011, Aguilar, a Mexican citizen, became a lawful permanent resident of the United States. In 2013, Aguilar was charged with evading arrest or detention through the use of a vehicle, a third degree felony. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A) (West Supp. 2014).[1] In carrying out his plea bargain agreement with the State, Aguilar pled guilty to evading arrest or detention using a vehicle. The record before the trial court indicates that before Aguilar pled guilty, he signed a written plea admonishment advising him that "[i]f you are not a U.S. citizen, a plea of guilty or nolo contendere may result in your deportation, exclusion from admission to the country or denial of naturalization under federal law." *See* Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) (West Supp. 2014) (providing that prior to accepting a plea of guilty or nolo contendere the court shall admonish the defendant of "the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law").

---

[1]At the time Aguilar was arrested for evading arrest or detention using a vehicle, Aguilar was also arrested for driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(d) (West Supp. 2014).

The record before the trial court also indicates that during Aguilar's plea hearing, Aguilar informed the court that he spoke a "little bit[]" of English and that he had an interpreter at the hearing to translate for him. Upon learning that Aguilar was not a U.S. citizen, and in addition to the written admonishments that he signed, the transcript of the hearing on Aguilar's plea reflects that the trial court orally admonished Aguilar that "a plea of guilty may result in your deportation, exclusion from admission to the United States or denial of naturalization under United States federal law." Aguilar responded to the trial court's statement by stating: "Yes, I understand." After Aguilar pled guilty, the trial court placed Aguilar on deferred adjudication for five years.

Approximately six weeks after he was found guilty, and based on the request of officials of the United States who asserted Aguilar's conviction for evading arrest subjected him to deportation proceedings as a deportable alien, Aguilar was arrested. *See* 8 U.S.C.S. § 1227(a)(2)(A)(i) (Lexis 2014) (providing that any alien is deportable if convicted within five years after the date of admission of a crime involving moral turpitude and a sentence of one year or longer may be imposed); *see also id.* § 1101(a)(48)(A) (Lexis 2014) (defining the term "'conviction'" to include a deferred adjudication). Seeking to avoid the effect of his plea on his status as a lawful permanent resident, Aguilar asked the trial court to revoke his conviction for evading arrest in his application seeking a writ of habeas corpus. In

3

his application, Aguilar challenged the validity of his plea by claiming he received ineffective assistance of counsel because he was not properly advised about the immigration consequences he would face by choosing to plead guilty. *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 1 (West Supp. 2014) (establishing procedures for an application for a writ of habeas corpus in which an applicant seeks relief from an order or judgment of conviction ordering community supervision).

In support of his application, Aguilar filed three affidavits—one he signed, one signed by the person who served as his interpreter during the plea proceeding, and one signed by his cousin. In Aguilar's affidavit, Aguilar states that before pleading guilty, he asked his attorney several times if pleading guilty would cause him to be deported. According to Aguilar's affidavit, his attorney told him that pleading guilty would not affect his immigration status. And, Aguilar's affidavit indicates that had he known that his conviction would cause him to be deported, he would not have pled guilty.

The affidavit signed by Aguilar's interpreter acknowledges that the trial court mentioned the possibility that Aguilar might be deported when Aguilar told the trial court that he was not a U.S. citizen. However, according to the interpreter, he and Aguilar both understood that as long as Aguilar followed the rules regarding his probation, Aguilar would not be deported. The interpreter's affidavit

4

indicates that had Aguilar known he was going to be deported, Aguilar would not have pled guilty.

The affidavit signed by Aguilar's cousin states that she had attended school with Aguilar, and that although she tried to help Aguilar learn English, he had trouble learning the language and dropped out of school. The affidavit signed by Aguilar's cousin indicates that Aguilar did not know English well enough to understand it. Her affidavit further indicates that Aguilar understood that he would probably be deported if his probation were to be revoked; however, her affidavit then states that he did not understand he would be deported if he just pled guilty. The application Aguilar filed in support of his writ does not include an affidavit from the attorney who represented him when he decided to plead guilty to using a vehicle to evade being arrested.

The trial court considered Aguilar's application, the affidavits that accompanied it, and it took judicial notice of its file. Based on the evidence, the trial court denied Aguilar's application and made written findings to explain its ruling. According to the trial court, Aguilar, his interpreter, and his cousin are interested witnesses, and the affidavits of Aguilar's interpreter and cousin established no facts of consequence because they did not demonstrate they had knowledge about what Aguilar's attorney told him. Additionally, the trial court

5

found Aguilar's claim that he was entirely unaware of the deportation consequences of his plea to be "incredible[.]"

With respect to whether a conviction for evading arrest is a crime of moral turpitude, a ground that allows an alien to be deported, the trial court concluded that the federal statute authorizing a legal permanent resident's deportation for crimes of moral turpitude did not contain "'succinct, clear, and explicit'" wording as to what risk, if any, Aguilar faced of being deported by pleading guilty to using a vehicle to evade arrest. Based on its conclusion that it was not clear whether the federal statute properly applied where the defendant's conviction was for evading arrest, the trial court held that Aguilar was sufficiently advised about the consequences of his plea. Based on the evidence and its legal conclusions, the trial court rejected Aguilar's claim that he received ineffective assistance before choosing to plead guilty.

## Standard of Review

Aguilar is authorized to pursue an appeal from the trial court's ruling on his application seeking a writ of habeas corpus. *See id.* art. 11.072 § 8 (West Supp. 2014). During the hearing on an application seeking post-conviction habeas corpus relief, the applicant has the burden of proving by a preponderance of the evidence that he is entitled to relief. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). We use an abuse-of-discretion standard when reviewing decisions

6

denying habeas corpus relief. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). The evidence the trial court reviewed in making its decision on the writ is reviewed, on appeal, in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). The trial judge is the sole finder of fact with respect to the habeas hearing; therefore, we afford almost total deference to the trial judge's factual findings where they are supported by the record, particularly when the trial court's findings are based on the resolution of questions of credibility and demeanor. *Guerrero*, 400 S.W.3d at 583. We follow this same standard where the evidence the trial court reviewed was all submitted by affidavits. *Id.* On the other hand, if the ultimate question under review turns on the application of legal standards, the trial court's resolution of the legal question is reviewed using a de novo standard. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).

## Analysis

Aguilar contends that he was given ineffective assistance because his attorney failed to advise him that by pleading guilty to the charge of evading arrest he faced certain deportation. The State argues that because the federal deportation statute does not clearly specify whether crimes like evading arrest are considered crimes of moral turpitude, the immigration consequences of Aguilar's plea at the

7

time he chose to plead guilty were unclear. Based on the uncertainty about whether using a vehicle to evade arrest qualifies as a crime of moral turpitude, the State contends that Aguilar was properly advised, as he was essentially told that his plea might cause federal officials to seek to have him deported.

The test for determining the validity of a guilty plea is whether it represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). The two-pronged *Strickland* test applies when a habeas applicant challenges a guilty plea based on ineffective assistance. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a complaint about counsel's plea advice, the applicant must show by a preponderance of the evidence that (1) counsel's plea advice did not fall within the range of competence demanded by attorneys in criminal cases, and (2) there is a reasonable probability that, but for counsel's deficient performance, the applicant would have insisted on going to trial rather than accepting the offer and pleading guilty. *Moussazadeh*, 361 S.W.3d at 691; *see also Hill*, 474 U.S. at 56, 58-59.

In *Padilla*, the Supreme Court of the United States held that counsel must inform his client whether his plea carries a risk of deportation. *Padilla*, 559 U.S. at

8

374. Where the immigration consequences of pleading guilty to a specific crime are not succinct and straightforward, counsel's duty is to advise the defendant of the possibility that the plea may carry a risk of adverse immigration consequences. *Id.* at 369. When federal immigration law clearly specifies that a defendant will be deported based on a conviction of a crime, counsel must affirmatively and correctly advise the defendant about the immigration consequences of the plea. *Id.* at 368-69. Thus, to prove a violation of *Strickland's* first prong, Aguilar was required to demonstrate to the trial court that the deportation consequences of pleading guilty to a charge of evading arrest were truly clear. *See id.* at 369. To meet his burden under the second *Strickland* prong, Aguilar was required to show the trial court that he would have rationally chosen to reject the plea he was offered, and that he would have chosen instead to go to trial. *See Hill*, 474 U.S. at 59; *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005).

The record reflects that Aguilar is a lawful permanent resident and that the removal proceedings commenced against him were based on his conviction for evading arrest. Under federal immigration law, an alien is automatically deportable if within five years after the date of being admitted, the alien is convicted of a crime involving moral turpitude that subjects the alien to a sentence of one year or longer. *See* 8 U.S.C.S. § 1227(a)(2)(A)(i). However, federal law does not define the crimes that qualify as crimes of moral turpitude; that question was left to the

Board of Immigration Appeals and to federal courts. *Fuentes-Cruz v. Gonzales*, 489 F.3d 724, 726 (5th Cir. 2007).

The Board of Immigration Appeals in *Fuentes-Cruz* defines moral turpitude as follows:

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the appreciated rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind. (internal citations omitted)

*Id.* (quoting *Hamdan v. INS*, 98 F.3d 183, 186 (5th Cir. 1996)). Whether a crime is a crime of moral turpitude is a legal question. *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 287 (5th Cir. 2007). We review the trial court's resolution of whether the consequences of pleading guilty to evading arrest were certain as a legal issue, using a de novo standard. *See Peterson*, 117 S.W.3d at 819.

The trial court found that when Aguilar decided to plead guilty, the law, as related to the crime of evading arrest and the question of moral turpitude, was unsettled. The trial court also found that Aguilar failed to provide it with any federal cases or statutes that identified the crime of evading arrest as a crime of moral turpitude. Without any evidence or legal authority showing that the

10

consequences of pleading guilty to the crime of evading arrest were clear, the trial court rejected Aguilar's claim that his counsel was ineffective, finding that Aguilar failed to establish, by a preponderance of the evidence, that his counsel's performance was objectively unreasonable under professional norms. *See Strickland*, 466 U.S. at 687-88.

In his brief, Aguilar has not provided us with any authority showing that for purposes of deportation of aliens, a conviction for evading arrest would be treated by the federal courts as a crime of moral turpitude. However, there are two unpublished opinions that appear to reach opposite conclusions regarding whether evading arrest is a crime of moral turpitude. In *Dominguez v. State*, the Amarillo Court of Appeals held that a prior conviction for evading arrest could not be used for the purpose of impeachment because it is not a crime of moral turpitude. No. 07-02-0264-CR, 2003 Tex. App. LEXIS 2002, at **5-6 (Tex. App.—Amarillo Mar. 4, 2003, pet. ref'd) (not designated for publication). The trial court cited the *Dominguez* case in its findings. The Fifth Circuit Court of Appeals also addressed whether using a vehicle to evade arrest is a crime of moral turpitude in a deportation case in *Pulido-Alatorre v. Holder*, 381 F. App'x 355, 358-59 (5th Cir. 2010). In concluding that evading arrest using a vehicle can be a crime of moral turpitude, the Fifth Circuit held that the Board of Immigration Appeals acted reasonably by determining that the alien's conviction for evading arrest using a

vehicle qualified as a crime of moral turpitude. *Id.* However, the Fifth Circuit's opinion in *Pulido-Alatorre* has no precedential value and is not binding precedent except under certain circumstances that do not apply here. *See* 5TH CIR. R. 47.5.4 (determining that unpublished opinions "are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like")). The fact that only two non-published opinions address whether evading arrest with a vehicle is a crime of moral turpitude shows the matter is not one that can be considered well-settled.

We agree with the trial court's conclusion that whether the United States would treat a conviction for evading arrest as a crime of moral turpitude in immigration cases remains an unsettled area of the law. We hold that Aguilar failed to show that his attorney was ineffective during his plea proceedings based on the advice the record shows he received. *See generally Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009) (noting that where the proper construction of a statute was unresolved and remains unclear, "counsel usually may not be held to have rendered ineffective assistance"); *Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005) (explaining that "legal advice which only later proves to be incorrect does not normally fall below the objective standard of

12

reasonableness"). Because the trial court did not abuse its discretion by denying Aguilar's application, we affirm the trial court's order.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on August 21, 2014
Opinion Delivered September 24, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

13